[No. 32314-8-I.    Division One.    March 14, 1994.]

The State of Washington, *Respondent,* v. Chima Lee
Robinson, *Appellant.*

*James R. Dixon* of *Associated Counsel for the Accused,* for
appellant.

*Norm Maleng, Prosecuting Attorney,* and *Rian K. Ebesugawa, Deputy,* for respondent.

SCHOLFIELD, J. — Chima L. Robinson, a juvenile, appeals the order of disposition entered against him on January 26, 1993, for one count of second degree robbery based on accomplice liability. He contends that the evidence is insufficient to support his conviction. We reverse.

The testimony during Robinson's disposition hearing revealed the following facts. On the evening of April 12, 1992, Robinson was driving his mother's car near Green Lake in Seattle. Three friends were in the back seat and a friend named James Baker was in the front passenger seat. At one point, Robinson reached an intersection and stopped the car at a red light. One car was in front of him and several cars were behind him. When the light turned green, Robinson slowly proceeded through it behind the car ahead of him.

Without saying anything, Baker suddenly opened the front passenger door and jumped out of the car and onto the sidewalk. The door remained opened. Robinson did not know what Baker was doing and called out to him several times, "Man, what are you doing? Man, get back into the car, guy." Robinson realized he was blocking traffic behind him, so he pulled the car over to the side of the road. He and the three youths in the back seat tried to see what Baker was doing. Robinson could see Baker with a girl, and they looked like they might have been struggling. He could not see the girl's actions.

Several witnesses saw Baker grab the purse of 14-year-old Jacquelyn Reynolds. Reynolds had been walking on the sidewalk about 5 or 6 feet from Robinson's car with her friend Trine Eriksen. Baker and Reynolds both held onto part of the purse strap and struggled for 10 to 15 seconds. Reynolds finally let go of the purse, and Baker took it back to the car and got in.

When Baker got into the car, Robinson saw the purse and panicked. He felt he could not leave Baker there since he

was a friend, so he drove off quickly and made a left turn. He told Baker he was stupid for what he had done and demanded he get the purse out of the car. Baker threw the purse out the window. A witness followed in her car to try to record Robinson's license plate number. Robinson later dropped Baker off at a friend's house and did not report the incident to the police.

Sometime thereafter, Seattle Police Detective Mixsell traced the car to Robinson's mother and contacted Robinson at school to question him about the incident. Robinson explained what had happened. The State subsequently charged Robinson with one count of robbery in the second degree on the theory of accomplice liability. The charging document read as follows:

> That the respondent Chima Lee Robinson, in King County, Washington, together with another, on or about 12 April 1992, did unlawfully take personal property, to-wit: a purse and its contents, with intent to steal from the person and in the presence of Jacquelyn Reynolds, against her will, by the use or threatened use of immediate force, violence and fear of injury to such person or her property;
>
> Contrary to RCW 9A.56.210 and 9A.56.190 . . .[.]

Reynolds and her friend Eriksen testified during the disposition hearing, as did Robinson and the witness who tried to follow him. In addition, the testimony of one of the youths who had been in the car was consistent with Robinson's testimony.

The trial court found Robinson guilty as charged for "reasons set forth on the record". The court's reasoning on the record included the following:

> Mr. Robinson, your attorney has worked very hard to put a better light on what happened. But the facts are very simple. Your last answer, or almost last answer, was — the question was, "What was going on in your head when you saw him come back into the car?" And you said, "Well, I thought this guy has just [taken] this purse and I just panicked. And you just don't leave your friend." And really, that does say it all.
>
> Your knowledge was that the guy had taken the purse. You saw the struggling and you saw not the details, but at least saw generally what was happening. You were shocked. You

were not happy about what happened. But you escorted him and you transported him away from that area.

The analogy to the get-away driver in a bank robbery or something is at least partially apt. Usually the bank robber has somebody that knows about what's happening and knows that he's got to zoom away quickly. But that person, if he knows what's going on, is equally liable as the one who goes into the bank.

Here once you knew what had happened, you're not permitted to escape and take this man away. If you do take him away, you are involved. You're just as involved as he is.

. . . .

At any rate, it's overwhelmingly apparent that even though it was at the last minute, you aided and abetted this man's actions. . . . I can't make a finding that the State has not proved its case.

The trial court's written findings included the following:

4. James Baker grabbed Jacqueline [*sic*] Reynolds' purse. Jacqueline [*sic*] Reynolds held onto her purse and the two struggled over the purse for several moments with both pulling on the purse. James Baker overcame the resistance of Jacqueline [*sic*] Reynolds and Jacqueline [*sic*] Reynolds dropped the purse. James Baker got the purse and jumped back into [Robinson's] car. . . .

5. When James Baker got back into the car, [Robinson] saw that James Baker had the girl's purse in his possession. [Robinson] thought that James Baker [had] just taken the girl's purse.

6. [Robinson] panicked, and knowing that James Baker had just forcefully taken the purse from Jacqueline [*sic*] Reynolds, but believing that he should not leave his friend, [Robinson] quickly drove away, taking an immediate left and subsequently [losing] the driver that followed to take down the license plate.

7. [Robinson] took James Baker to a friend's house and did not return to check on the victim or make any attempt to return her property to her.

From the findings, the court concluded that Robinson "knowingly aided and abetted James Baker in committing the crime of Robbery in the Second Degree" beyond a reasonable doubt. Conclusion of law 3. The court consequently found Robinson guilty of robbery in the second degree as charged. Robinson was later sentenced to commitment for 21 to 28 weeks. The sentence was stayed pending this appeal.

The sole issue presented is whether the evidence is sufficient to support Robinson's conviction of knowingly aiding

and abetting Baker in committing the crime of second degree robbery. Robinson argues that the evidence does not support his conviction because his actions did not help Baker commit the robbery and only amounted to rendering criminal assistance after the robbery was complete. The State relies on the "transactional view" of robbery to argue that Baker's robbery was not complete until he escaped and, thus, by helping Baker escape, Robinson helped him commit the robbery.

■■ The standard of review for a challenge to the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). The relevant elements of accomplice liability are as follows:

> A person is an accomplice of another person in the commission of a crime if:
>
> (a) With knowledge that it will promote or facilitate the commission of the crime, he
>
> . . . .
>
> (ii) aids or agrees to aid such other person in planning or committing it[.]

RCW 9A.08.020(3). To aid and abet another person's criminal act, one must associate oneself with the undertaking, participate in it with the desire to bring it about, and seek to make it succeed by one's actions. *In re Wilson*, 91 Wn.2d 487, 491, 588 P.2d 1161 (1979); *State v. Galisia*, 63 Wn. App. 833, 839, 822 P.2d 303, *review denied*, 119 Wn.2d 1003 (1992). "Mere knowledge or physical presence at the scene of a crime neither constitutes a crime nor will it support a charge of aiding and abetting a crime." *Wilson*, 91 Wn.2d at 491-92 (quoting *State v. J-R Distribs., Inc.*, 82 Wn.2d 584, 593, 512 P.2d 1049 (1973), *cert. denied*, 418 U.S. 949 (1974)).

The elements of robbery are as follows:

> A person commits robbery when he unlawfully takes personal property from the person of another or in his presence against his will by the use or threatened use of immediate force, violence, or fear of injury to that person or his property

856

or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial. . . .

RCW 9A.56.190. Upon committing robbery, a person is guilty of second degree robbery, which is a class B felony. RCW 9A.56.210.

Washington has adopted the "transactional view" of robbery. *State v. Manchester*, 57 Wn. App. 765, 770, 790 P.2d 217, *review denied*, 115 Wn.2d 1019 (1990). Pursuant to that view, a robbery can be considered an ongoing offense so that, regardless of whether force was used to obtain property, force used to retain the stolen property or to effect an escape can satisfy the force element of robbery. *Manchester*, 57 Wn. App. at 769-70.

In *Manchester*, the defendant was convicted of two counts of first degree robbery. He had been observed taking cigarettes from two different stores and on each occasion, as he attempted to leave the store, an employee tried to stop him and recover the cigarettes. In both instances, Manchester displayed a weapon when he was approached. In one instance, he threatened that he had a gun and would shoot the employee. 57 Wn. App. at 766. The key issue decided on appeal was whether force used to retain stolen property satisfied the force element of robbery as set forth in RCW 9A.56.190. The court held that the statutory definition of robbery included such force, noting that the Legislature had previously amended the statute to omit language that force or fear used " 'merely as a means of escape . . . does not constitute robbery.' " 57 Wn. App. at 770. By doing so, the Legislature indicated its intent "to broaden the scope of taking, for purposes of robbery, by including violence during flight immediately following the taking." 57 Wn. App. at 770.

While *Manchester* also states that the transactional view "does not consider the robbery complete until the assailant has effected his escape", 57 Wn. App. at 770, that broad statement should be read in the context of the specific

issue in that case: whether force used *after* property is taken, to retain the property or effect an escape, satisfies the force element of robbery. *See generally State v. Handburgh*, 119 Wn.2d 284, 288-94, 830 P.2d 641 (1992) (discussing and following *Manchester* in the same context of whether the defendant's use of force after the original taking satisfied the element of force for robbery). When it is undisputed that the defendant used force to take personal property unlawfully from a person "or in his presence against his will" but used no additional force to retain the property or to effect an escape, the transactional view has no application. Such a taking is the common law form of robbery, codified in the first sentence of RCW 9A.56.190, where force is used to effect the unlawful taking. It is unnecessary in that situation to consider whether any force was used to retain the stolen property or to effect an escape.

Here, it is undisputed that Baker used force to take Reynolds' purse. It is also undisputed that, once he obtained the purse, Baker simply got into Robinson's car. He did not use any additional force to retain the purse or to try to escape. Thus, as the State conceded during oral argument, the taking was complete once Baker possessed the purse and returned to the car. Consequently, the "transactional view" does not apply to these facts.

■ Because Baker had completed the act of robbery by the time he reentered the car and Robinson saw the purse, Robinson could not have aided and abetted Baker's crime. He neither associated himself with Baker's undertaking, participated in it with the desire to bring it about, nor sought to make the crime succeed by any actions of his own. *See Wilson*, 91 Wn.2d at 491; *Galisia*, 63 Wn. App. at 839. His knowledge that Baker seemed to be struggling with Reynolds and his mere presence at the scene cannot amount to accomplice liability for Baker's crime. *See Wilson*, 91 Wn.2d at 491-92. Likewise, Robinson's subsequent action of driving away with Baker could not have aided and abetted Baker to commit the second degree robbery because by then, Baker had already completed that crime.

Instead, Robinson's actions were more in the nature of rendering criminal assistance. A person is guilty of "rendering criminal assistance"

> if, with intent to prevent, hinder, or delay the apprehension or prosecution of another person who he knows has committed a crime or juvenile offense . . ., he:
>
> . . . .
>
> (3) Provides such person with . . . transportation . . . or other means of avoiding discovery or apprehension[.]

RCW 9A.76.050(3). *See also State v. Anderson*, 63 Wn. App. 257, 818 P.2d 40 (1991), *review denied*, 118 Wn.2d 1021 (1992). The State, however, elected not to charge Robinson with rendering criminal assistance. Because no rational trier of fact could have found the elements of accomplice liability for second degree robbery beyond a reasonable doubt, the evidence is insufficient to sustain Robinson's conviction.

The trial court's judgment and sentence is reversed and the case dismissed.

PEKELIS, A.C.J., and BECKER, J., concur.