IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 30806-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSE GARCIA MORALES, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — Jose Garcia Morales appeals his conviction as an accomplice to first degree murder, attempted first degree murder, and two counts of assault. He argues that the trial court abused its discretion in refusing to give five nonpattern jury instructions he contends were needed to clearly present the standard for accomplice liability. We disagree. The trial court reasonably concluded that the Washington pattern jury instruction on accomplice liability was an evenhanded and sufficient statement of the law from which Mr. Garcia Morales could present his defense. We affirm.

FACTS AND PROCEDURAL BACKGROUND

On a December night in 2008, brothers Ramon and Jose Garcia Morales traveled to the home of Alfredo and Maria Garcia with a grievance to vent. Ramon, Jose, and the Garcias were all farm workers, but Alfredo had the additional responsibility of compiling

the list of workers who would be hired to plant and top the onions for one of the local onion packing plants.[1] Ramon had not been included in the list of approved workers, was in a desperate financial situation, and blamed Alfredo, who was his relative by marriage.[2] Ramon would later tell detectives that the day before he and Jose went to see Alfredo, he told Jose and his sister Virginia that he planned to approach Alfredo the next day and demand money from him. If Alfredo refused to pay at least part of the money Ramon believed he had missed out on, then he would kill Alfredo.

The next night, the brothers went to the Garcia home. Both were armed with handguns. Five members of the Garcia family were home when Ramon and Jose arrived: Alfredo, Maria, and three of their children: two teenaged daughters, Erika and Maricela, and Kimberly, an infant.

Alfredo was the only member of the family in the living room when Ramon and Jose arrived. Maria heard the two brothers talking loudly with Alfredo about money but did not initially join them. When she did enter the living room, Alfredo explained to her that Ramon and Jose were demanding money because Ramon had not been called to work with the crew at the onion packing facility. Maria later testified that Alfredo

---

[1] The members of the Garcia family and the two Garcia Morales brothers share a last name. To avoid confusion, we use their first names in the statement of facts. No disrespect is intended.

[2] Jose and Ramon are brothers of Alfredo's brother's wife. Alfredo's daughter Erika described them as "family members." Report of Proceedings (RP) at 607.

offered to take them to the foreman's house the next day, but Ramon demanded to go there immediately. When she heard Alfredo say something to the brothers about not needing their guns,[3] she left the room to call the police. That was the last thing she remembered. Evidence was later presented that her 911 call was answered, she made statements in Spanish to the dispatcher, and then hung up; the dispatcher's attempt to call her back was not answered. Apparently Ramon began firing at her and Alfredo very shortly after her call.

Hearing gunshots, Erika and Maricela went to the living room and saw Ramon—and perhaps Jose; Erika's testimony was inconsistent—shooting their parents. Both would later testify that Ramon and Jose pointed guns at them at one point, in response to which their father told the brothers not to shoot the girls. While Ramon then fired additional shots at her father, the brothers did not shoot at the two girls.

Erika called 911 as soon as Ramon and Jose left. By the time help arrived, Alfredo, who had been shot six times, was dead. Maria was alive but unresponsive and barely breathing. She had been shot four times, including once to the face, twice to the chest, and once to the left lung. Her injuries left her unable to walk.

The next morning Erika and Maricela identified Ramon and Jose from a photomontage. Both described Ramon as the person who had shot their parents. They

---

[3] Maria testified that her husband said, "[Y]ou don't need that, Ramon. You don't need that gun. We can just talk with words." RP at 524.

3

described Jose as the person who was standing by the door, holding a gun, and acting like a lookout.

Ramon and Jose were arrested the next day, and Ramon confessed two days after the shooting. He told detectives that he was the only one who did any shooting and that when his handgun ran out of bullets, he took Jose's handgun and fired additional shots with it. He was adamant that Jose never fired a shot, characterizing him as being a lookout. Ramon was separately tried and was convicted.[4]

Jose was ultimately charged with the first degree murder of Alfredo, the attempted first degree murder of Maria, and two counts of second degree assault of Erika and Maricela. The State sought firearm enhancements for each of the four counts.[5]

At trial, the State argued that Jose was liable as an accomplice, pointing to evidence that he knew about his brother's plan to either get money from Alfredo or to kill him, brought his own gun into the Garcias' home, supplied Ramon with either bullets or a gun, and acted as a lookout. Jose defended on the basis that while he was present at the scene, he did not assist in the crimes. To support the defense theory, Jose presented evidence showing his lack of motive (unlike Ramon, he had been given work in the fields) and statements Erika and Maricela made to the police shortly after the shooting

---

[4] *State v. Morales*, noted at 177 Wn. App. 1026 (2013), *review denied*, No. 89659-3 (Wash. Mar. 5, 2014).

[5] The State also charged Jose with rendering criminal assistance in the first degree, but withdrew the charge at the close of its case.

No. 30806-5-III
*State v. Garcia Morales*

indicating that Jose never fired shots, never pointed a gun at them, and stopped Ramon

from shooting the girls. The girls contradicted some of those reported statements at trial.

Jose proposed five nonpattern jury instructions on accomplice liability. His

proposed instructions would have told the jury:

> Mere assent to the commission of a crime is not enough to make someone
> an accomplice.

Clerk's Papers (CP) at 115.

> Neither is presence at the scene of a crime sufficient, even when coupled
> with knowledge that the presence [aids] in the crime's commission.

CP at 116.

> For presence to rise to the level of complicity, the defendant must be ready
> to assist in the commission of the crime.

CP at 117.

> Failure to act does not establish complicity. This remains true even if the
> person had a duty to act. For example a person's failure to protect his or
> her child from assault does not make the person an accomplice in that
> assault.

CP at 118. And,

> A person is also not an accomplice if that person's sole involvement with
> the crime arises after the crime was committed.

CP at 119. Although the Washington pattern jury instructions for criminal trials include a

pattern instruction on accomplice liability, *see* 11 WASHINGTON PRACTICE: WASHINGTON

5

PATTERN JURY INSTRUCTIONS: CRIMINAL 10.51 (3d ed. 2008) (WPIC), Jose did not include it in his proposed instructions.

The court refused to give Jose's proposed instructions, ruling that the pattern instruction, WPIC 10.51, was sufficient and would enable the defense to argue the points raised in its proposed instructions.

The jury found Jose guilty on all counts and returned special verdicts that he was armed with a firearm at the time he committed each crime. He was sentenced to 906.5 months of confinement. He appeals.

## ANALYSIS

The principal instructional concern of the defense was to be able to argue that the actions of Jose (whom we refer to hereafter as Mr. Garcia Morales) did not meet the standard for accomplice liability. But it is the role of the trial court, not a criminal defendant, to decide how best to instruct the jury. Jury instructions are proper if "substantial evidence supports them, they allow the parties to argue their theories of the case, and, when read as a whole, they properly inform the jury of the applicable law." *State v. Hathaway*, 161 Wn. App. 634, 647, 251 P.3d 253 (2011). "[I]t is not error for a trial court to refuse a specific instruction when a more general instruction adequately explains the law and allows each party to argue its case theory." *Id.*

Where a defendant alleges an *error of law* in a jury instruction, we review the instruction de novo. *State v. Willis*, 153 Wn.2d 366, 370, 103 P.3d 1213 (2005).

"*Whether to give a particular jury instruction,*" on the other hand, "is within the trial court's discretion." *Boeing Co. v. Key*, 101 Wn. App. 629, 632, 5 P.3d 16 (2000) (emphasis added).

The Washington pattern instruction on accomplice liability given by the trial court informed the jury:

> A person is guilty of a crime if it is committed by the conduct of another person for which he or she is legally accountable. A person is legally accountable for the conduct of another person when he or she is an accomplice of such other person in the commission of the crime.
> A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of the crime, he or she either:
> (1) solicits, commands, encourages, or requests another person to commit the crime; or
> (2) aids or agrees to aid another person in planning or committing the crime.
> The word "aid" means all assistance whether given by words, acts, encouragement, support, or presence. A person who is present at the scene and ready to assist by his or her presence is aiding in the commission of the crime. However, more than mere presence and knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice.

CP at 57-58.

As noted in *State v. Hoffman*, WPIC 10.51 "is drawn directly from the accomplice statute." 116 Wn.2d 51, 102-04, 804 P.2d 577 (1991) (finding no error in the instruction insofar as it correctly states the mental state required for an accomplice). The pattern

instruction largely mirrors the language of the accomplice statute,[6] adding a definition of

the term "aid." *State v. Williams*, 28 Wn. App. 209, 211, 622 P.2d 885 (1981). Its

definition of "aid" as requiring assistance or readiness to assist is consistent with

Washington case law. *Id.*; *In re Welfare of Wilson*, 91 Wn.2d 487, 491, 588 P.2d 1161

(1979); *State v. Aiken*, 72 Wn.2d 306, 349, 434 P.2d 10 (1967), *vacated on other grounds

by Wheat v. Washington*, 392 U.S. 652, 88 S. Ct. 2302, 20 L. Ed. 2d 1357 (1968).

The State does not dispute that Mr. Garcia Morales's proposed instructions were

correct statements of the law, derived from published Washington decisions that he cited

to the trial court as support.[7] It does disagree—and rightly so—with Mr. Garcia

---

[6] The accomplice liability statute, RCW 9A.08.020, provides, in relevant part:
   (3) A person is an accomplice of another person in the commission
of a crime if:
   (a) With knowledge that it will promote or facilitate the commission
of the crime, he or she:
   (i) Solicits, commands, encourages, or requests such other person to
commit it; or
   (ii) Aids or agrees to aid such other person in planning or
committing it; or
   (b) His or her conduct is expressly declared by law to establish his or
her complicity.
We quote the current version of RCW 9A.08.020, which was amended by Laws of 2011,
chapter 336, section 351 to make the language gender neutral.

[7] As support for his instructions, Mr. Garcia Morales cited *State v. Renneberg*, 83
Wn.2d 735, 739, 522 P.2d 835 (1974) ("It is true that assent to the crime alone is not
aiding and abetting."); State *v. Rotunno*, 95 Wn.2d 931, 933, 631 P.2d 951 (1981)
("'something more than presence alone plus knowledge of ongoing activity must be
shown to establish the intent requisite to finding [defendant] to be an accomplice'"
(quoting *In re Welfare of Wilson*, 91 Wn.2d 487, 492, 588 P.2d 1161 (1979))); *State v.*

Morales's argument that if the instructions he requested accurately stated the law, then the trial court should have given them. "The law is well established that the fact that certain language is used in an appellate court decision does not mean that it can be properly incorporated into a jury instruction." *State v. Alexander*, 7 Wn. App. 329, 335, 499 P.2d 263 (1972); *accord Williams*, 28 Wn. App. at 212; *State v. Dunning*, 8 Wn. App. 340, 342 n.2, 506 P.2d 321 (1973) (noting that "language quoted from an appellate court opinion does not necessarily make a proper jury instruction"). In particular, "[t]he refusal to give a requested instruction is not error when the subject matter is adequately covered in the court's other instructions." *State v. Etheridge*, 74 Wn.2d 102, 110, 443 P.2d 536 (1968).

Mr. Garcia Morales must therefore persuade us of at least one of two contentions: (1) that the pattern instruction prevented him from arguing his defense theory that he was merely present and, at most, failed to stop his brother from acting and rendered assistance

---

*Robinson*, 35 Wn. App. 898, 903, 671 P.2d 256 (1983) ("The evidence must show both presence and readiness (intent to assist) before a person can be found guilty as an accomplice."); *State v. Jackson*, 87 Wn. App. 801, 944 P.2d 403 (1997), *aff'd*, 137 Wn.2d 712, 976 P.2d 1229 (1999) (Failure to act does not establish complicity. This remains true even if the person had a duty to act. For example a person's failure to protect his or her child from assault does not make the person an accomplice in that assault.); *State v. Robinson*, 73 Wn. App. 851, 872 P.2d 43 (1994) (a person is also not an accomplice if that person's sole involvement with the crime arises after the crime was committed).

after the fact by retrieving the two handguns from the Garcia home, or (2) that the pattern instruction was misleading and failed to accurately state the law of accomplice liability.[8]

With this burden in mind, we review his proposed instructions.

First proposed instruction: *"Mere assent to the commission of a crime is not enough to make someone an accomplice."* The pattern instruction advised the jury that *"more than mere presence and knowledge* of the criminal activity of another must be shown to establish that a person present is an accomplice." CP at 57-58 (emphasis added). Mr. Garcia Morales nonetheless claims that the pattern instruction contradicts itself by defining "aid" as "all assistance whether given by words, acts, encouragement, support, or presence." CP at 57. The definition of "aid" further provides, however, that "[a] person who is present at the scene *and ready to assist by his or her presence* is aiding in the commission of the crime." *Id.* (emphasis added). A critical, consistent concept in the definition of "aid" is that of "assistance," which Mr. Garcia Morales chooses to ignore. In *State v. Renneberg*, our Supreme Court held that instructing the jury that readiness to assist or actual assistance is a required component of "aiding" avoided the

---

[8] Mr. Garcia Morales emphasizes that there was conflicting evidence as to how Erika, Maricela, and Maria characterized his role in the crimes immediately after they occurred, at the trial of Ramon Garcia Morales, and in direct and cross-examination at his trial. He suggests that these contradictions heightened the need for instructions beyond the pattern instruction. The fact that there were conflicts in the evidence would increase the likelihood that an error was prejudicial if we were engaged in harmless error analysis. But it does not alter the analysis of whether the instructions given correctly stated the law and enabled the defense to argue its theory of the case.

10

error of suggesting that "mere assent" could establish complicity. 83 Wn.2d 735, 739, 522 P.2d 835 (1974) (contrasting what it held to be correct instruction from the instruction held to be error in *State v. Peasley*, 80 Wash. 99, 141 P. 316 (1914)). The pattern instruction is not internally contradictory and enabled Mr. Garcia Morales to argue that mere assent to the commission of a crime would not establish accomplice liability.

Second proposed instruction: "*Neither is presence at the scene of a crime sufficient, even when coupled with knowledge that the presence [aids] in the crime's commission.*" Mr. Garcia Morales cites *State v. Rotunno*, 95 Wn.2d 931, 933, 631 P.2d 951 (1981), which clearly supports this statement of the law—but *Rotunno* also observed that "[t]his interpretation of the law has been embodied in the Washington pattern instructions [at] WPIC 10.51." It was only because the trial court in *Rotunno* modified the instruction by eliminating its last sentence that the Supreme Court found it to be misleading. *Rotunno* implicitly establishes that when given in its complete, unmodified form, WPIC 10.51 encompasses the principle of law that Mr. Garcia Morales proposed as his second instruction.

Third proposed instruction: "*For presence to rise to the level of complicity, the defendant must be ready to assist in the commission of the crime.*" This proposed instruction is functionally equivalent to Mr. Garcia Morales's second proposed instruction. As recognized in *Rotunno* and in *Williams*, 28 Wn. App. at 212, the last

11

paragraph of WPIC 10.51 makes clear that the defendant must have been ready to assist in the crime, thereby allowing Mr. Garcia Morales to argue to the jury that while present, he was not ready to assist.

Fourth proposed instruction: *"Failure to act does not establish complicity. This remains true even if the person had a duty to act. For example a person's failure to protect his or her child from assault does not make the person an accomplice in that assault."* The pattern instruction nowhere states or suggests that a failure to act suffices as complicity. In *State v. Jackson*, 137 Wn.2d 712, 720-22, 976 P.2d 1229 (1999), which Mr. Garcia Morales relies upon for this statement of law, the trial court committed error by modifying WPIC 10.51 to provide—incorrectly—that accomplice liability extends to a person based upon his or her failure to fulfill a duty to come to the aid of another. *Jackson* characterized the modification as a *"notable expansion* on the reach of the statute," because "such a basis for accomplice liability does not appear in the statute." *Id.* at 722 (emphasis added). Such a basis for liability does not appear in the pattern instruction, either, and was not suggested by the State as a basis for accomplice liability. Mr. Garcia Morales could argue his theory of defense without an instruction negating a basis for liability that was not suggested by the pattern instruction.

Fifth proposed instruction: *"A person is also not an accomplice if that person's sole involvement with the crime arises after the crime was committed."* The language of the pattern instruction limits the temporal scope of accomplice liability to the planning

and commission of a crime: it states that "[a] person is legally accountable for the conduct of another person when he or she is an accomplice of such other person *in the commission of the crime.*" CP at 57 (emphasis added). It further provides that a person can only be an accomplice in the commission of the crime if—"with knowledge *that it will* promote or facilitate the commission of the crime"—he or she either (1) "solicits, commands, encourages, or requests another person *to commit the crime*" or (2) "aids or agrees to aid another person *in planning or committing the crime.*" *Id.* (emphasis added). This language limits a person's liability to conduct that occurs either before or during the commission of the crime. The State did not rely upon Mr. Garcia Morales's acts following commission of the crimes as a basis for his guilt; in any event, he was free to point to the temporal references in the pattern instruction to argue that guilt must be based on acts preceding or occurring during the commission of the crime.

Since the legal principles reflected in Mr. Garcia Morales's proposed instructions on accomplice liability were all encompassed in the pattern instruction, the trial court did not abuse its discretion by giving only the pattern instruction.

Affirmed.

A majority of the panel has determined that this opinion will not be printed in the

Washington Appellate Reports but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Brown, J.

_____
Fearing, J.