2014 JUL 21 AM 10:

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON , | ) | No. 70427-3-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| JAHAD V.D. HILL, | ) | |
| DOB: 4/18/95 | ) | |
| | ) | |
| Appellant. | ) | FILED: July 21, 2014 |

SPEARMAN, C.J. — Jahad V.D. Hill challenges the sufficiency of the evidence supporting his juvenile adjudication for residential burglary. We find no error and affirm.

## FACTS

Thu Phan lives on the north side of the 400 block of SW 126th Street in Burien. Around 9:30 a.m. on September 24, 2012, Phan left her home to go to a doctor's appointment. While Phan was gone, her home was burglarized.

Daniel Mendes lives on the south side of the 400 block of SW 126th Street, opposite Phan. Around the same time that Phan left her house, Mendes was on his lawn talking to a neighbor. He saw a male walk up to Phan's house, knock on the door, wait a few seconds, and then turn around and walk away.[1]

---

[1] A review of the record shows that Mendes did not identify this house as Phan's house, merely stating it was a neighbor's house. However, Hill does not assign error to the trial court's finding that Mendes saw "a male walk up to Phan's house, knock on her door, and walk away." Clerk's Papers (CP) at 16 (Finding of Fact 8). Unchallenged findings of fact are verities on appeal. State v. Levy, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006).

Mendes described the male as slender, African-American, about six feet tall, with short hair, and wearing a black jacket and dark pants or blue jeans. When asked if he thought the male's behavior seemed unusual for the neighborhood, Mendes replied:

> When my neighbor and I were talking, we noticed him walking down the street from the intersection and just go to that one particular house and then turn around and walk away. And we had commented, you know, that it seemed odd. We thought if it was a solicitor or something going door to door, he would have knocked on more doors than just the one.

Verbatim Report of Proceedings (VRP) (03/18,19/13) at 32-33.

Andrew Denny also lives in the neighborhood. When leaving his house to run an errand that morning, Denny saw two males sitting in a maroon Buick parked in the 800 block of SW 124th Street. Denny thought they "didn't look very friendly" so he circled the block. VRP (03/18,19/13) at 8. When he came back around, he saw the car parked in a different location a short distance away in the 700 block of SW 124th Street. He saw another male, who appeared to be going door to door to houses on the block, run towards the Buick. He described the two males in the car as "big stocky guys" and the third male as "skinny," on the taller side, and wearing a red baseball cap, khaki pants and red shoes. VRP (03/18,19/13) at 15. Denny called 911.

Kimberly McCann works at the Bel-R Greenhouse, which spans the 400 and 500 block of SW 124th Street. The greenhouse property extends back to SW 126th Street. Because the greenhouse does not sell to the public, it does not get much foot traffic. That morning McCann was looking out her office window when she noticed two black males cutting through the greenhouse's property. They

-2-

were "walking away from Phan's home, heading directly north." CP at 16 (Finding of Fact 13). She described the males as "walking rather fast and not looking around" and that they "were juggling stuff in and out of [a] bag." VRP (03/18, 19/13) at 69. McCann elaborated further on the bag:

> Q. When you were at your desk, you said that they were trying to stuff something into a bag.
>
> A. Yeah.
>
> Q. Could you please tell us more exactly kind of what you mean by that.
>
> A. Well, they were walking close together. They had this bag between the two of them like a plastic shopping bag kind of, and trying to shuffle things back and forth in it, so like from their hands into the bag.
>
> Q. Were both of the males that you saw handling the property that they were trying to put into the bag?
>
> A. I believe so. One of them was holding the bag, I think, and the other one was trying to put something in there. I didn't see what he was trying to put in there.

VRP (03/18,19/13) at 72-73. McCann watched as the two males walked towards SW 124th Street at which point she lost sight of them. She left her office and walked out to the street. A few minutes later, she saw both males come from behind a house on the opposite side of the street and run towards the street. They were no longer carrying the bag.

William Barker is a military police officer who lives in the 400 block of SW 124th Street, on the greenhouse's property. He owns a dog that barks whenever anyone walks past his house. Around 10:00 a.m., Barker's dog barked and Barker looked out his front window. Barker saw two black males, one tall and one short, walking down SW 124th Street. The taller male was "wearing all black."

VRP (03/18,19/13) at 55. The shorter male was carrying a yellow bag and both were "behaving in a furtive manner." VRP (03/18,19/13) at 52. A few minutes later, Barker's dog barked again, and Barker saw the same two males on the other side of the street in a neighbor's driveway. The males were no longer carrying the yellow bag and were "looking around for something or looking for somewhere to put something, . . ." VRP (03/18,19/13) at 53. Barker called 911.

At approximately 9:53 a.m., officers from the King County Sheriff's Office responded to the area. Neighborhood residents pointed out the two males and officers identified the taller male as Hill and the shorter male as Z.A. Z.A. was out of breath and sweaty. Officer Michael Glasgow went into the backyard of the residence McCann and Barker saw Hill and Z.A. come from and found a yellow backpack laying on the ground. The yellow backpack contained property from Phan's house as well as documents with Phan's name and address on them. Both McCann and Barker identified Hill and Z.A. as the two males they had seen carrying the bag. Officer Ray Galusha went to Phan's house, where he discovered that a window on the back side of the house was open and the window screen was damaged and laying on the ground below the window. A fingerprint matching Z.A. was lifted from the screen.

The State charged Hill with one count of residential burglary and one count of third degree possession of stolen property. Following a fact finding hearing, the trial court found Hill guilty of residential burglary and not guilty of possession of stolen property. Hill appeals.

## DISCUSSION

The sole issue presented is whether sufficient evidence supported the adjudication of residential burglary. Jahad V.D. Hill contends that the evidence showed only that he was walking with Z.A. shortly after Z.A. burglarized Phan's home, but not that he participated in the burglary himself. We find that the adjudication was adequately supported by the evidence.

Evidence is sufficient to support an adjudication of guilt in a juvenile proceeding if, viewed in the light most favorable to the State, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. State v. Echeverria, 85 Wn. App. 777, 782, 934 P.2d 1214 (1997) (citing State v. Green, 94 Wn.2d 221-22, 616 P.2d 628 (1980)). All reasonable inferences from the evidence must be drawn in favor of the State and against the defendant. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). Circumstantial evidence and direct evidence are equally reliable. Thomas, 150 Wn.2d at 874.

"In reviewing a juvenile court adjudication, we must decide whether substantial evidence supports the trial court's findings of fact and, in turn, whether the findings support the conclusions of law." State v. B.J.S., 140 Wn. App. 91, 97, 169 P.3d 34 (2007). We review conclusions of law de novo. Levy, 156 Wn.2d at 733.

A person is guilty of residential burglary if he "enters or remains unlawfully in a dwelling other than a vehicle" with "intent to commit a crime against a person or property therein." RCW 9A.52.025(1). A person is an accomplice of another

-5-

person in the commission of a crime if, "[w]ith knowledge that it will promote or facilitate the commission of the crime, he or she (i) [s]olicits, commands, encourages, or requests such other person to commit it; or (ii) [a]ids or agrees to aid such other person in planning or committing it." RCW 9A.08.020(3)(a). "'A person who is present at the scene and ready to assist by his ... presence is aiding in the commission of the crime.'" B.J.S., 140 Wn. App. at 98 (quoting State v. Dove, 52 Wn. App. 81, 87, 757 P.2d 990 (1988)).

Here, the State's evidence was sufficient to adjudicate Hill of residential burglary. Phan's house was burglarized sometime between 9:30 a.m. and 9:53 a.m. Around 9:30 a.m., a black male matching Hill's description walked up to Phan's front door, knocked, waited a few moments, and walked away. Soon thereafter, Hill and Z.A. cut through the greenhouse's property in a direction that led directly north from Phan's house to SW 124th Street. Hill and Z.A. were carrying a yellow bag between them and were shuffling things around in the bag. Both were behaving in a furtive manner. A few minutes later, Hill and Z.A. came from behind a house on the north side of SW 124th Street without the bag. The bag, containing items stolen from Phan's home, was discovered in the house's backyard. A window in the back of Phan's home had been opened and Z.A.'s fingerprints were discovered on the window screen. There was no reasonable explanation for why Hill would knock on Phan's door, why Z.A.'s fingerprints would be on Phan's window screen, or why Hill and Z.A. would be in possession of Phan's property. Though the evidence was circumstantial, taken together, it was sufficient to support the residential burglary adjudication.

Hill argues that his mere presence near the scene of the crime is insufficient to establish guilt. In support, Hill relies on In re Welfare of Wilson, 91 Wn.2d 487, 588 P.2d 1161 (1979) and State v. Robinson, 73 Wn. App. 851, 872 P.2d 43 (1994).

In Wilson, a group of youths tied a rope around a tree, strung the rope across a road, and pulled the rope taut as cars approached. Wilson, 91 Wn.2d at 489. The juvenile defendant was adjudicated of reckless endangerment though the evidence showed that the defendant was merely standing with the group. Wilson, 91 Wn.2d at 489-90. The court reversed, holding that the defendant's presence, knowledge of the crime and acquaintance with the participants was not sufficient to support the adjudication. Wilson, 91 Wn.2d at 491-92. In Robinson, the juvenile defendant drove some friends around in his mother's car. Robinson, 73 Wn. App. at 852. Without warning, one of the friends jumped out of the car, grabbed a bystander's purse, and jumped back into the car. Robinson, 73 Wn. App. at 852. The defendant was adjudicated of second degree robbery. Robinson, 73 Wn. App. at 854. The court reversed, holding that the defendant's knowledge that his friend committed a crime and "his mere presence at the scene" did not constitute robbery. Robinson, 73 Wn. App. at 857.

In contrast to Wilson and Robinson, the evidence of Hill's guilt went beyond the mere fact that he was present at the scene of the crime. A male matching Hill's description approached Phan's house and knocked on the front door around the same time that Phan's house was burglarized. Hill and Z.A. were later seen hurrying away from Phan's house and handling a bag containing

items stolen from her home. They then entered the backyard of another house and concealed the bag. This evidence was sufficient to create a reasonable inference that Hill participated in the burglary.

Citing State v. Mace, 97 Wn.2d 840, 650 P.2d 217 (1982), Hill argues that the evidence that he handled the stolen property was insufficient to prove that he participated in the burglary. In Mace, the court held that "proof of possession of recently stolen property, unless accompanied by other evidence of guilt, is not prima facie evidence of burglary." Mace, 97 Wn.2d at 843. The State must show at least "slight corroborative evidence of other inculpatory circumstances." Mace, 97 Wn.2d at 843 (quoting State v. Portee, 25 Wn.2d 246, 253-54, 170 P.2d 326 (1946)). Such circumstances include flight or "presence of the accused near the scene of the crime." Mace, 97 Wn.2d at 843.

Here, as discussed above, the trial court did not rely solely on the evidence that Hill had handled the yellow bag. Rather, the trial court evaluated this evidence in combination with other inculpatory factors, including Hill's flight from Phan's home and his presence with Z.A. a block from Phan's house.

Finally, Hill argues that because the trial court did not make a specific finding that Hill was the individual who knocked on Phan's door, this court must assume that the person who knocked on Phan's door was not Hill.[2] He relies on State v. Armenta, 134 Wn.2d 1, 14, 948 P.2d 1280 (1997), which held that the

---

[2] Finding of Fact 8 states: "Daniel Mendes lives across the street from Phan on SW 126th Street. At 9:30 that morning, Mendes was out in his front lawn. He saw a male walk up to Phan's house, knock on her door, and walk away." Finding of Fact 9 states: "Mendes described the male that knocked on Phan's door as young, African-American, six feet tall, slender, wearing dark pants, with short hair." CP at 16.

absence of a finding regarding a material fact is presumptively regarded as a finding against the party having the burden of proof.

But this court may review a finding when an implicit finding can be inferred from the record. State v. Sisouvanh, 175 Wn.2d 607, 618, 290 P.3d 942 (2012). Here, the trial court made oral findings which were expressly incorporated into its written findings and which indicate rejection of Hill's argument. In its oral ruling, the trial court stated:

> So these events did in fact occur within a relatively short period of time. There is a limit to the value of any evidence, including circumstantial evidence, however, sometimes circumstantial evidence adds up and becomes far more than mere coincidence. I do not know and will not conclude that the person that Mr. Denny saw and described as wearing a red hat and red hightops was either Mr. Hill or Mr. Ahmed. It doesn't fit the descriptions by the other people. However, I do believe that in a very short period of time the testimony of Mr. Barker, Ms. McCann and Mr. Mendes, all of whom saw what was happening in a short period of time, all of whom identified the people the police had detained as the people they had seen carrying the yellow bag and then going without the yellow bag combined with the testimony about this area and the map...which shows the ingress and egress from this property and a driveway that goes, partly paved, mostly not paved, from 124th over to 4th Avenue South. The locations where Mr. Hill and Mr. Ahmed were sighted. The fact that Mr. Hill was arrested with Mr. Ahmed and Mr. Ahmed's prints were found on the screen, that is far more than mere coincidence, that is a lot of circumstantial evidence that places Mr. Hill at the scene of this residential burglary.

VRP (03/18,19/13) at 165-66. The trial court implied that while there was not sufficient evidence that the taller male Denny saw was Hill, there was sufficient evidence that the taller male that McCann, Barker and Mendes saw was Hill. The trial court also noted that Mendes's description of Hill's age, race, height, physique and clothing was consistent with Barker's description. Though the trial court inaccurately stated that Mendes had seen Hill carrying the bag – Mendes

had only seen the knocking on Phan's house on SW 126th Street, not the flight on SW 124th Street – it is apparent from its ruling that the trial court made an implicit finding that the individual who knocked on Phan's door was Hill. In conclusion, we hold that the State presented sufficient evidence to prove that Hill participated in the burglary. Accordingly, we affirm.[3]

Spearman, C.J.

WE CONCUR:

Leach, J.                    Dwyer, J.

---

[3] Hill contends that several of the trial court's written findings were not supported by substantial evidence. We agree with Hill that substantial evidence did not support the two following findings:

- "Around 9:30 that morning, Denny saw a maroon car following a young African-American male who was walking from house-to-house." CP at 16 (Finding of Fact 5). Denny did not testify as to the male's race, nor did he testify that the car was following the male.
- "If a customer decides to visit [the Bel-R Greenhouse], they always schedule an appointment." CP at 16 (Finding of Fact 12). While McCann testified that the greenhouse receives little foot traffic, she did not testify that customers always scheduled an appointment.

However, even absent these findings, the evidence was sufficient to support Hill's adjudication.