IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36637-5-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| KEANDRE DESHAWN BROWN, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — A jury convicted Keandre Brown of several felonies related to the armed robbery of a pharmacy in Clark County, Washington. We affirm Mr. Brown's convictions, but remand with instructions to strike the criminal filing fee and the use of motor vehicle finding from the judgment and sentence.

FACTS

In the summer of 2016, two masked gunmen entered the Mill Plain Medical and Pharmacy in Vancouver, Washington, demanding oxycodone. While one of the men purloined the drugs from the pharmacy's safe, the other man ordered employees and customers around at gunpoint.

The two men exited the pharmacy through the front door and ran to a vehicle that was backed into a slot of the pharmacy's parking lot. A police officer sitting in traffic nearby saw the two men run to the vehicle and drive away. Although his suspicions were aroused, the officer did not initiate a pursuit because he was not yet aware of any criminal conduct.

The pharmacy's surveillance system recorded the robbery. The footage showed that during the robbery the suspects' masks would sometimes slip down, revealing their faces. Law enforcement retained still images from the surveillance footage to help in their investigation. The photographs were of a high quality and showed a clear view of the suspects' faces.

A probation officer identified Keandre Brown and his cousin as the two men depicted in the surveillance photographs. The officer knew Mr. Brown through his employment and had interacted with Mr. Brown numerous times, including approximately 10 conversations over the course of three and one-half years. The probation officer's last contact with Mr. Brown occurred in early 2016.

The State charged Mr. Brown with first degree robbery with a pharmacy enhancement and two firearm enhancements, four counts of second degree assault, each

2

with two firearm enhancements, and two counts of first degree unlawful possession of a firearm.

Prior to trial, Mr. Brown moved to prevent the probation officer from identifying him in the surveillance photos. The trial court denied this request, finding the probation officer had sufficient contacts with Mr. Brown to permit an identification. The probation officer identified Mr. Brown in the still photos at trial.

A jury found Mr. Brown guilty as charged and found that both Mr. Brown and his accomplice possessed firearms during the robbery and assaults.

Mr. Brown's attorney filed a memorandum in anticipation of sentencing, requesting an exceptional sentence downward based, in part, on Mr. Brown's youth. The State also filed a sentencing memorandum. The State noted that Mr. Brown's sentencing range, including firearm enhancements, was 549-591 months. The State also noted that current case law would permit an exceptional sentence downward based on mitigating circumstances related to Mr. Brown's youth. However, the State declined to recommend an exceptional sentence downward. Instead, the State asked the court to vacate five firearm enhancements, thereby reducing Mr. Brown's sentencing range to 333-375 months.

At sentencing, the State requested a sentence of 360 months. When asked for the defense position, Mr. Brown's attorney no longer pursued his request for an exceptional sentence downward. Instead, defense counsel explained that the State's favorable sentencing recommendation was the result of the parties' negotiations. As stated by defense counsel:

> Whether this young man at 19 was considered too youthful or too mature for any kind of alternative, the State has determined, after reading the defense's request and argument under case law, that the compounding of the firearm enhancement created an unjust sentencing and has asked for 204 months to be reduced. That was our request. That is our goal.

Report of Proceedings (Oct. 10, 2017) at 681.

After hearing from the parties, the court noted its authority to impose a mitigated sentence based on Mr. Brown's youth. The court commented that the parties' sentencing recommendation reflected an acknowledgement of recent science related to juvenile brain development and the "legal trend" against life sentences for youthful offenders. *Id.* at 682. Had Mr. Brown received a sentence within the range determined by the jury's verdict, the court observed that Mr. Brown would effectively receive a "life sentence." *Id.* But with the parties' recommendation, Mr. Brown would get out of custody at age 50. This was still a "stiff sentence," but the court found it appropriate, given the significant negative impact on Mr. Brown's victims. *Id.* at 683.

4

In addition to imposing a 360-month sentence, the trial court found a motor vehicle

was used during the commission of Mr. Brown's robbery and assault offenses, and that

Mr. Brown was subject to a $200 criminal filing fee.

Mr. Brown timely appeals his judgment and sentence. A Division Three panel

considered Mr. Brown's appeal without oral argument after receipt of an administrative

transfer of the case from Division Two.

ANALYSIS

Mr. Brown makes an evidentiary challenge to his conviction as well as several

arguments related to sentencing.[1] Mr. Brown in his opening brief also objects to the trial

court's failure to enter findings of fact and conclusions of law after a pretrial CrR 3.5

hearing. Because uncontested findings and conclusions have since been entered, this

final contention is now moot and we confine our analysis to the evidentiary and

sentencing contentions.

*Evidentiary challenge*

Mr. Brown claims the trial court abused its discretion in allowing the probation

---

[1] Mr. Brown has also filed a statement of additional grounds for review, in which
he makes two challenges to his conviction. Because both arguments rest on facts outside
the appellate record, they must be raised in a personal restraint petition, not on direct
review. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

officer to identify Mr. Brown from the surveillance footage and still photos.  According

to Mr. Brown, the probation officer's testimony unfairly bolstered the State's case by

invading the province of the jury.  We disagree.

ER 701 permits a lay witness to "give an opinion concerning the identity of a

person depicted in a surveillance photograph if there is some basis for concluding that the

witness is more likely to correctly identify the defendant from the photograph than is the

jury." *State v. Hardy*, 76 Wn. App. 188, 190, 884 P.2d 8 (1994).  The evidence here

meets this standard.  The probation officer testified to extensive contacts with Mr. Brown,

occurring over the course of several years.  Based on these contacts, the trial court had a

tenable basis for determining the probation officer was better equipped to identify Mr.

Brown from the surveillance footage than the jury.  *Cf. State v. George*, 150 Wn. App.

110, 119, 206 P.3d 697 (2009) (Identification testimony was improper when the testifying

officer lacked pre-offense contact with defendants.).  There was no abuse of discretion.

*Ineffective assistance of counsel at sentencing*

Mr. Brown next argues that his counsel provided ineffective assistance at

sentencing by failing to follow through on his motion for an exceptional sentence

downward.  To prove ineffective assistance, Mr. Brown must demonstrate his attorney's

performance was both deficient and prejudicial.  *Strickland v. Washington*, 466 U.S. 668,

687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  When defense counsel's conduct can be characterized as reasonably strategic, it will not be deemed ineffective.  *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009).

Defense counsel's conduct here was both effective and strategic.  Defense counsel recognized the compelling circumstances relevant to Mr. Brown's sentencing.  But rather than wait for the sentencing hearing to take a chance on leniency from the court, defense counsel made the strategic decision to seek a favorable disposition from the State.  This effort paid off.  The State agreed to reduce Mr. Brown's sentencing range by 15 to 19 years.  This saved Mr. Brown from the uncertainty of a contested sentencing hearing involving sympathetic victims.  It also protected Mr. Brown from an adverse appeal. Far from providing defective representation, the record indicates that Mr. Brown's attorney provided excellent counsel.  No constitutional violation occurred.

*Sentencing finding regarding use of a motor vehicle*

Mr. Brown contends the trial court erred in finding that he used a motor vehicle in the commission of the robbery and assaults, pursuant to RCW 46.20.285(4).  Because this issue involves the application of a statute to a specific set of facts, our review is de novo. *State v. Hearn*, 131 Wn. App. 601, 609, 128 P.3d 139 (2006).

RCW 46.20.285(4) provides for a one-year revocation of a driver's license for "[a]ny felony in the commission of which a motor vehicle is used." The term "used" as provided in this statute means "'employed in accomplishing something.'" *State v. Batten*, 95 Wn. App. 127, 129, 974 P.2d 879 (1999) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2524 (3d ed. 1966)), *aff'd*, 140 Wn.2d 362, 997 P.2d 350 (2000). This statute is applicable only when a vehicle has been "'employed in accomplishing' the crime." *Id*. at 129-30. There must be a relationship between the vehicle and the commission or accomplishment of the crime. *State v. Alcantar-Maldonado*, 184 Wn. App. 215, 228, 340 P.3d 859 (2014) (citing *Batten*, 140 Wn.2d at 365). A vehicle is not used in the commission of a crime where it was incidental to the commission of the crime, or merely used for transport to or from a crime scene. *Id*. at 229-30.

The record here fails to show that a vehicle played more than an incidental role in Mr. Brown's offense conduct. Mr. Brown was not in the car at the time he initiated his crimes against the pharmacy's occupants. And he did not enter the car to leave the scene until after the offenses were complete. Although the crime of robbery can extend past the initial act of obtaining property from a victim, *see* RCW 9A.56.190 (Robbery includes force or fear "used to obtain or retain possession of the property, or to prevent or

8

overcome resistance to the taking."), that is not what happened here.[2]  No one attempted to thwart Mr. Brown's retention of the stolen drugs.  As a result, his offense ended upon illegal acquisition of the property.  *See State v. Robinson*, 73 Wn. App. 851, 857, 872 P.2d 43 (1994) ("When it is undisputed that the defendant used force to take personal property unlawfully from a person 'or in his presence against his will' but used no additional force to retain the property or to effect an escape, the transactional view [of robbery] has no application.").  Because the vehicle was used only during Mr. Brown's post-offense activities, not during the act of robbery or assault, RCW 46.20.285(4)'s license suspension provision is inapplicable.

## Criminal filing fee

As the parties agree, recent statutory changes prohibit imposition of a $200 criminal filing fee on a defendant, such as Mr. Brown, who is indigent at the time of sentencing.  *See* RCW 36.18.020(2)(h); *State v. Ramirez*, 191 Wn.2d 732, 747, 426 P.3d 714 (2018).  The filing fee must therefore be struck.

---

[2] The crime of assault has no such extended application.

No. 36637-5-III
*State v. Brown*

## CONCLUSION

Mr. Brown's convictions are affirmed. We remand with instructions to strike the

$200 criminal filing fee and the use of motor vehicle finding from Mr. Brown's judgment

and sentence.

A majority of the panel has determined this opinion will not be printed in

the Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____   _____
Lawrence-Berrey, C.J.               Korsmo, J.