[No. 34514. Department One. January 8, 1959.]

THE STATE OF WASHINGTON, *Respondent*, v. ROY E. MEVIS, *Appellant*.[1]

[1]Reported in 333 P. (2d) 1095.

*Charles O. Carroll* and *Anthony Savage, Jr.*, for respondent.

*Irving C. Paul, Jr.*, for appellant.

HILL, C. J.—This is an appeal from a conviction of second-degree burglary, and from the establishment of the status of the defendant as an habitual criminal. It comes before us on a twenty-eight page narrative statement of facts prepared through the cooperation of the attorney for the defendant and the assistant prosecuting attorney. It presents concisely the evidence pertinent to the issues raised by the defendant on this appeal. Counsel are to be commended; such cooperation could materially reduce the cost of appeals in many criminal and civil cases. ·

The Seven Seas Tavern in Seattle was burglarized at about 2:30 a. m. on February 19, 1957. Entrance into the

false ceiling above the men's room in the tavern was made through or around a ventilating air duct located in the upper right-hand corner of a window at the rear of the building, which window had been broken by the intruder. He had then kicked loose a panel in the ceiling that covered the men's room, and broke open the door from that room into the tavern itself. Two pinball machines, operated by nickels, and one juke box, operated by dimes and quarters, were broken into and their contents removed. The coin container inside the juke box was a small white cloth bag. The tavern owner, on occasion, used Japanese ten-yen pieces, which are approximately the same size as quarters, to keep the juke box playing. After the burglary, the white cloth bag, the ten-yen pieces, and all of the coins were missing; a sugar bag full of nickels had been left behind along with a small crowbar.

The Seven Seas Hotel is above the tavern with its office on the second floor. The hotel night clerk, upon hearing the burglar alarm from the tavern, looked into the front hall and saw a man, whom he later identified as the defendant, entering a closet. The clerk ordered the man to leave, followed him to the street, and saw him go north on First avenue. When the police arrived, the clerk accompanied them upon a search of the neighborhood business establishments. The defendant was found in a nearby theatre lobby, and the clerk identified him as the man who had been in the hotel. His arrest followed, and it was found that he had a quantity of dust, dirt, and minute particles of glass on the shoulders of his jacket. The police searched him, and found a small white cloth bag containing quarters and forty-one ten-yen pieces; he also had a large quantity of dimes and nickels loose in his pockets, and some paper money in his back pocket. The quarters, dimes, and nickels added up to $51.90. The defendant protested the police keeping the paper money, saying, "That's my money."

The defendant was questioned twice after his arrest. He first claimed that an unidentified man on the sidewalk had thrust the white cloth bag of coins and ten-yen pieces into

his hand, but later said he had obtained them from a man in the Seven Seas Hotel. He did not know the man's name or his whereabouts. At one time he told police that he would plead guilty, but later entered a plea of not guilty and went to trial.

A jury found him guilty of burglary in the second degree. A supplemental information then charged the defendant with being an habitual criminal, and a jury thereafter found him so to be. The defendant, in consequence of that finding, was sentenced to life imprisonment on the conviction of burglary in the second degree.

He appealed, and first assigns error to the trial court's holding that there was sufficient evidence to support a verdict of guilty of burglary in the second degree. The claim is made that the verdict must have rested upon an inference of guilt derived from circumstantial evidence of possession of recently stolen property, an inference upon an inference.

The rule is that mere proof of possession of such property cannot in itself establish a *prima facie* case of larceny or burglary. *State v. Portee* (1946), 25 Wn. (2d) 246, 170 P. (2d) 326, and cases and authorities there cited. When the possession is established by inference rather than by direct proof, the reason for the rule is even stronger. *State v. Willis* (1952), 40 Wn. (2d) 909, 246 P. (2d) 827; *State v. Gillingham* (1949), 33 Wn. (2d) 847, 207 P. (2d) 737; *State v. Payne* (1893), 6 Wash. 563, 34 Pac. 317.

The defendant points out that none of the goods in his possession at the time of his arrest was identified as being the goods that were stolen. The coins were, as a practical matter, impossible of identification. The owner of the Seven Seas Tavern and his wife both testified that the white cloth bag taken from the defendant was similar to that which had hung in the juke box until the night of the burglary, but no positive identification was made. Defendant's possession of recently stolen property must necessarily have been established by inference. The state concedes that if this were the only evidence of guilt, the defendant's challenge to its sufficiency should have been sustained.

However, the circumstances of defendant's unexplained presence in the hall of the hotel above the tavern (as the burglar alarm was ringing downstairs), and his apparent attempt to hide in a closet; the condition of his clothes at the time of his arrest, with particles of dust and glass upon them such as would be accumulated in entering the tavern as the burglar apparently had done; defendant's admissions to the police; and defendant's inconsistent explanations of his possession of the white bag and coins found upon his person, which could not be checked or rebutted, all point to his guilt. The challenge to the sufficiency of the evidence was properly denied. *State v. Willis, supra; State v. Portee, supra; State v. Munson* (1893), 7 Wash. 239, 34 Pac. 932.

The defendant requested the following instruction:

"Before you may draw any inference unfavorable to the defendant from the possession of recently stolen property, the property itself must be identified with certainty as the particular stolen property and the possession of the defendant, if any, must be proved by direct evidence to have been exclusive, personal and conscious possession on the part of the defendant. Under the law you must not pyramid inference upon inference. This is to say you must not infer from circumstantial evidence that the defendant was in possession of stolen property, if he was, and then from such inferred possession make a further inference unfavorable to the defendant."

This instruction was refused. The trial court instructed as follows:

"The possession of property recently stolen, if any such is shown, may or may not be taken as a criminating circumstance connected with such possession. It is a circumstance to be considered by the jury in connection with all the other evidence in the case in determining the guilt or innocence of the accused, and its weight as evidence, like that of any other fact, is to be determined by you alone."

Defendant has assigned error both to the court's instruction and to the court's refusal of the proposed instruction. The effect of circumstantial evidence of possession of recently stolen property is thus put in issue on this appeal.

■ The defendant's strictly cautionary instruction would tell the jury, in effect, that unless *direct* evidence proves the accused's possession of stolen property, no possible further inference unfavorable to the accused could follow from such possession; circumstantial evidence of such possession could thus be of no effect whatsoever in the jury's deliberations on an accused's guilt of larceny or burglary. If this were the law, it would imply a basic difference in value between direct and circumstantial evidence which does not exist in fact. It is axiomatic that convictions may be had upon circumstantial evidence alone. See *State v. Bates* (1958), 52 Wn. (2d) 207, 324 P. (2d) 810; *State v. Donckers* (1939), 200 Wash. 45, 93 P. (2d) 355. It would be going too far, in the context of the present case, to deny any effect on the issue of burglary to circumstantial evidence that the defendant possessed the recently stolen coins. There was no error in the refusal to give the defendant's proposed instruction.

■ However, we do not commend the quoted instruction given by the trial court as a completely satisfactory statement of the law. While evidence, circumstantial or direct, of possession of recently stolen property can be considered by the jury, together with the other evidence in the case, as bearing upon the guilt of the accused, such evidence cannot of itself support a verdict of guilty of larceny or burglary. *State v. Portee, supra.* In the *Portee* case we quoted from 1 Wharton's Criminal Evidence (11th ed.) 198, § 191, as follows:

" 'Mere possession of stolen goods, unaccompanied by other evidence of guilt, is not to be regarded as prima facie evidence of burglary. *But the rule is otherwise when there is indicatory evidence on collateral points.*' "

The italics were supplied by the court, and it went on to point out the nature of this so-called "indicatory evidence on collateral points" by a quotation from 4 Nichols on Applied Evidence 3664, § 29,

" 'SUFFICIENCY IN CONNECTION WITH OTHER EVIDENCE. Possession of recently stolen property, in connection with other evidence tending to show guilt, is sufficient to warrant

a conviction. When a person is found in possession of recently stolen property, slight corroborative evidence of other inculpatory circumstances tending to show his guilt will support a conviction. When the fact of possession of recently stolen property is supplemented by the giving of a false or improbable explanation of it, or a failure to explain when a larceny is charged, . . . a case is made for the jury.' "

An instruction which tells the jury that such possession may create a "criminating circumstance," and that the weight to be given to such a circumstance is to be determined by the jury alone, could—in a case where the other evidence was weak or nonexistent—lend itself to the possible construction that such possession might of itself convict an accused.

The court approved an instruction in *State v. Humphreys* (1922), 118 Wash. 472, 476, 203 Pac. 965, 967, where there was circumstantial evidence that the wheat in the defendant's possession had been stolen, which, modified to fit the present situation, would seem to be more accurate and less subject to misconstruction.

" 'I instruct you that where a person is accused of larceny, proof of recent possession of the property alleged to have been stolen is not of itself sufficient to justify a conviction of larceny. Therefore, if you find beyond a reasonable doubt that the wheat alleged to have been stolen by the defendant in this case was in his possession at or about the time it is alleged to have been stolen, and you further find that such wheat was stolen property, still the defendant's possession thereof, if you so find, is not alone sufficient to warrant you in finding him guilty, but is a circumstance which may be taken in connection with all the other facts and circumstances in the case in arriving at your verdict.' "

The state is entitled to have the jury consider the defendant's possession of recently stolen goods, no matter how that possession is established, as a circumstance which may point towards guilt of larceny or burglary. The defendant, on the other hand, is entitled to have the jury know that such possession must be established beyond a reasonable doubt before any further inferences may be drawn

therefrom; and, furthermore, that such possession cannot constitute the whole case against the defendant. The trial court's instruction expressed this idea adequately for the present case, but the instruction from the *Humphreys* case we have quoted seems preferable where "indicatory evidence on collateral points" is not so strong as here.

■ We find no prejudicial error in the second degree burglary trial, but the defendant also attacks the adjudication that his status is that of an habitual criminal. After the verdict of guilty of burglary in the second degree, a supplemental information was filed, charging the defendant with being an habitual criminal. The supplemental information charged four different prior felony convictions, but did not mention the present second-degree burglary conviction on which the defendant was to be sentenced. Because of that omission, the defendant attacks the supplemental information as not properly charging him with being an habitual criminal. This contention has been raised in this court before and has been rejected. *State v. Domanski* (1941), 9 Wn. (2d) 519, 115 P. (2d) 729. The supplemental information was proper in form to charge the defendant with being an habitual criminal. See *State v. Spencer* (1924), 130 Wash. 595, 228 Pac. 689.

In the habitual criminal proceeding, the state had to prove that the defendant in the present second-degree burglary trial had at least two prior felony convictions. RCW 9.92-.090. The state produced the defendant's fingerprints, made by the King county sheriff's office with photographic enlargements of the print made by the left-ring finger; these were admitted into evidence. Certified copies were admitted of the four judgments and sentences on the prior convictions which had been charged. For each sentence, under the certification of the warden of the institution involved, were admitted (a) copy of the warrant and commitment, (b) copy of the judgment and sentence, (c) fingerprints made upon entry to the institution, (d) a picture taken upon entry to the institution, and (e) a statement of the duration of imprisonment. Photographic enlargements were admitted of the left-ring finger from each prison-made set of

fingerprints. A fingerprint expert from the sheriff's office compared the various sets of fingerprints, emphasizing matching irregularities in each print of the left-ring finger, and gave his opinion that each set was that of the defendant. The defendant did not take the stand, and did not at any time deny any of the alleged prior convictions.

The jury found, in a general verdict, that the defendant was an habitual criminal; in special verdicts they found the defendant to have been the person described in the second and third alleged convictions, and not the person described in the first and fourth.

 The defendant now asserts that the warden's certified evidence, relating to the third and fourth convictions, should not have been admitted because of an inconsistency between the two certificates, both of which were made by Mr. B. J. Rhay, warden of the state penitentiary. Exhibit 2, concerning the third alleged offense, stated that the accused had been convicted in 1946, and had been released on June 7, 1949. Exhibit 3, concerning the fourth alleged offense, stated that the accused had been convicted on April 20, 1949, and released in 1955. The inconsistency, with reference to dates, indicates that either one certificate or the other was in error, or else that they did not describe the same man. The defendant did not raise the objection at the trial that the exhibits were mutually contradictory; had such an objection been made at that time, the error might have been corrected. The jury made its own choice, accepting the evidence of the third alleged offense, and rejecting the evidence of the fourth alleged offense. The jury's findings appearing to be consistent with and supported by the evidence before it, this court will not overturn the verdict.

The judgments and sentence appealed from are hereby affirmed.

MALLERY, FINLEY, OTT, and HUNTER, JJ., concur.

---

February 11, 1959. Petition for rehearing denied.