[No. 47984–4.   En Banc.   September 9, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. RAYMOND
PAUL MACE, *Petitioner.*

*Raymond Paul Mace,* pro se, and *John G. Ziegler,* for
petitioner.

*Curtis Ludwig, Prosecuting Attorney,* and *Ray Whitlow, Deputy,* for respondent.

DIMMICK, J.—Petitioner pleaded guilty to second degree possession of stolen property. Prior to sentencing on that plea, he was convicted under a separate cause number of second degree burglary arising out of an unrelated incident. The State then filed supplemental informations under each cause number charging petitioner with being a habitual criminal. Both supplemental informations alleged the same two prior felony convictions. The two habitual criminal proceedings were consolidated for trial; therefore, the same jury found petitioner to be a habitual criminal pursuant to RCW 9.92.090 on both counts. Based upon these findings, the trial court sentenced petitioner to two life sentences to run concurrently. Petitioner challenges the validity of his plea, the burglary conviction, and the sentences imposed. The Court of Appeals affirmed in an unpublished opinion. We uphold the plea but reverse the burglary conviction. We also vacate both life sentences and remand this matter for resentencing on petitioner's plea of guilty to second degree possession of stolen property, thus allowing the prosecuting attorney to resubmit one habitual criminal charge.

Petitioner first contends that his guilty plea is invalid because upon entering it he was not informed of the possibility of sentence enhancement under the habitual criminal statute. This argument was rejected in *State v. Barton,* 93 Wn.2d 301, 609 P.2d 1353 (1980), where we held a court need only inform a defendant of all the direct consequences of his plea. We decline to overrule *Barton,* despite petitioner's urgings.

Petitioner's principal arguments focus upon the insufficiency of the evidence presented at his second degree burglary trial. The evidence was as follows: Mr. and Mrs. Swift, the victims, went to bed in Richland about 2 a.m. the morning of the burglary. At about 8 a.m. they were awakened by their apartment manager who had Mrs. Swift's purse. The purse had been left on a desk inside the Swifts'

apartment when the Swifts went to bed but a neighbor found the purse outside sometime later with its contents scattered on the ground. The Swifts then noticed that a window and sliding glass door were open. Mrs. Swift went through her purse and found that her credit cards, including a Rainier Bank cash machine card, were missing. The personal cash machine identification number, normally kept either in a desk or in Mrs. Swift's purse, was also gone. In addition, Mr. Swift's wallet, as well as a few items of clothing, were missing.

During the investigation of the burglary, the police found an unidentifiable footprint and a garbage can turned upside down outside the Swifts' window. Mrs. Swift called Rainier Bank and was informed that the card had been used twice at about 4:30 a.m. in Kennewick on the morning of the burglary to withdraw a total of $150. When the police learned of the use of the card, they astutely requested the bank employees to retrieve the contents of a trash receptacle near the machine. The police found Mr. Swift's wallet inside a McDonald's restaurant paper sack which was in the receptacle. The bag had fingerprints on it identified as petitioner's but no fingerprints were found on the contents of the sack. The next day someone attempted to use the Swifts' card in the bank machine, but the machine seized it. This time a search of the trash receptacle next to the machine produced a bank receipt with a number which was not identified at trial. Fingerprints lifted from the receipt were also identified as petitioner's.

After the State presented its case and rested, Mace moved to dismiss. The motion was denied. Mace presented no defense and chose not to testify.

Second degree burglary is defined as follows:

A person is guilty of burglary in the second degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a building other than a vehicle.

RCW 9A.52.030(1). We agree with petitioner that the State failed to sustain its burden of proof. The State's evidence

proved only that petitioner may have possessed the recently stolen bank cards in Kennewick. There was no direct evidence, only inferences, that he had committed second degree burglary by entering the premises in Richland.

■ It is well settled law in Washington that proof of possession of recently stolen property, unless accompanied by other evidence of guilt, is not prima facie evidence of burglary. *State v. Garske,* 74 Wn.2d 901, 447 P.2d 167 (1968); *State v. Douglas,* 71 Wn.2d 303, 428 P.2d 535 (1967); *State v. Mevis,* 53 Wn.2d 377, 333 P.2d 1095 (1959); *State v. Portee,* 25 Wn.2d 246, 170 P.2d 326 (1946); *State v. Rodriguez,* 20 Wn. App. 876, 582 P.2d 904 (1978); *State v. Pisauro,* 14 Wn. App. 217, 540 P.2d 447 (1975); *State v. Beck,* 4 Wn. App. 306, 480 P.2d 803 (1971). The reason for the rule is more evident when such possession is established by inference or circumstantial evidence, as we have here, rather than direct evidence. *Mevis,* at 380.

It is, however, also well established that proof of such possession, if accompanied by "indicatory evidence on collateral matters," will support a burglary conviction. *Garske,* at 903. In *Portee,* we held at pages 253–54:

> ". . . When a person is found in possession of recently stolen property, slight corroborative evidence of other inculpatory circumstances tending to show his guilt will support a conviction. When the fact of possession . . . is supplemented by the giving of a false or improbable explanation of it, or a *failure to explain when a larceny is charged,* . . . *or the giving of a fictitious name,* a case is made for the jury."

(First italics ours.) Other circumstances include flight or the presence of the accused near the scene of the crime. *Portee,* at 254.

The only such corroborative evidence the State can point to here is petitioner's failure to explain the alleged possession of the bank card to the police at the time of his arrest or at the time of trial. The Court of Appeals relied heavily upon petitioner's silence in upholding his conviction. This

analysis cannot be sustained as it ignores petitioner's constitutional right to remain silent at trial as well as at the time of arrest. Calling the defendant's postarrest silence to the attention of the jury, or suggesting that an unfavorable inference might be drawn therefrom violates due process. *Doyle v. Ohio,* 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976); *State v. Fricks,* 91 Wn.2d 391, 588 P.2d 1328 (1979). *See also Griffin v. California,* 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229, *reh'g denied,* 381 U.S. 957 (1965). Similarly, this court cannot, consistent with due process, view a defendant's postarrest silence as evidence of his guilt.

Furthermore, although *Portee* indicates that failure to explain an alleged burglary is sufficient corroborative evidence, all of the cases adhering to the principles stated in *Portee,* including the *Portee* case itself, have had evidence before them beyond a defendant's silence. *E.g., State v. Garske, supra* (defendant actually denied knowledge of possession although the property was found on his premises, he was placed near the scene of the crime, he was not surprised when the police found the goods, and his trousers had a grease spot on them comparable to grease on the store's counter); *State v. Douglas, supra* (defendant gave an improbable explanation of his possession of stolen property); *State v. Mevis, supra* (defendant could not explain his presence in the hall above the tavern where goods were stolen or his attempt to hide in a closet, his clothing had dust and glass on them that would have been accumulated while entering the tavern as the burglar had apparently done, and he gave inconsistent explanations of his possession of the stolen goods); *State v. Portee, supra* (defendant gave police a fictitious name and address, and he gave an explanation regarding his possession that could not be checked or rebutted and one the jury could find to be improbable); *State v. Rodriguez, supra* (defendant's palm print was found on the glass counter on the employees' side of the counter in the store where the goods were stolen).

In sum, the cases allow corroborative evidence such as flight, improbable or inconsistent explanations, the giving

of fictitious names or circumstantial proof of entry to support a burglary conviction. Since petitioner's postarrest silence may not be used as evidence of his guilt, the only evidence in the instant case is the fingerprints found on the McDonald's sack and the receipt with an unidentified number, and the fact that the card had been used by someone shortly after the burglary. The inference is strong from this evidence that petitioner possessed the recently stolen property. However, the evidence does not support a conclusion that petitioner actually entered the premises. Accordingly, a case was not made for the jury and defendant's motion to dismiss for insufficient evidence should have been granted when the State rested.

Therefore, we reverse the burglary conviction. We necessarily vacate both life sentences as the two habitual criminal proceedings were so intertwined before the same jury that we have no way of determining what prejudice may have resulted from the erroneous burglary conviction before them. The prosecutor's decision to file the habitual criminal proceeding based upon the plea to possession of stolen property may also have been affected by the trial of the burglary charge. Thus, we remand this matter for resentencing on petitioner's plea of guilty to second degree possession of stolen property. We further instruct the prosecutor to use appropriate discretion in determining whether to reinstitute habitual criminal proceedings.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, UTTER, DOLLIVER, WILLIAMS, DORE, and PEARSON, JJ., concur.