IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 32296-3-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| RYAN MICHAEL WEIGANT, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Ryan Michael Weigant appeals from his convictions for second degree burglary and taking a motor vehicle without permission, arguing that (1) the State failed to present sufficient evidence to support the second degree burglary conviction and, (2) counsel was ineffective for failing to request a cautionary accomplice testimony instruction based on 11 *Washington Pattern Jury Instructions: Criminal* (WPIC) 6.05. Finding no error, we affirm.

## FACTS

Around 8:15 p.m. on August 31, 2012, Timothy Summers, a manager at a fish hatchery in Mossyrock, Washington, received a telephone call from a co-worker informing him that the hatchery's all-terrain vehicle (ATV or quad), which was stored in

the hatchery's garage, was missing. As he walked through the hatchery, Mr. Summers noticed that a moped had also been taken. About one week after the break-in, Tara Ann Watson contacted the Lewis County Sheriff's Office and told Detective William Adkisson that Benjamin Monk and Mr. Weigant had taken the quad and the moped. Detective Adkisson subsequently interviewed Mr. Monk, who admitted that he and Mr. Weigant had taken the quad and moped from the hatchery. The State charged Mr. Weigant with second degree burglary and taking a motor vehicle without permission.

At trial, Ms. Watson testified that she, Mr. Monk, and Mr. Weigant went to the fish hatchery at least two times in late August to fish at a public access area. Ms. Watson stated that on the second night, Mr. Monk and Mr. Weigant went for a walk after building a fire at the public access area. Ms. Watson became tired while waiting for the men to return and took a nap in the passenger seat of her car. When Mr. Monk and Mr. Weigant returned, they had a moped and a quad with them. The moped was placed in the trunk of Ms. Watson's car and the quad was towed. Mr. Weigant drove the car that towed the quad.

Detective Adkisson testified that after his initial interview with Mr. Monk, in which Mr. Monk reported that Mr. Weigant assisted him with the burglary, the prosecutor's office informed him that Mr. Monk was planning on testifying that Mr.

Weigant had not helped with the burglary. When Detective Adkisson interviewed Mr. Monk a second time, Mr. Monk denied that Mr. Weigant had helped him with the burglary. The detective testified, "Ben Monk told me that he was going to take the rap for the burglary because that was the truth." Report of Proceedings (RP) at 172.

When called to testify for the State, Mr. Monk denied initially telling Detective Adkisson that Mr. Weigant participated in the burglary. He stated that Ms. Watson, not Mr. Weigant, had helped him with the burglary. Mr. Monk stated that he was familiar with the fish hatchery and knew the quad was inside the hatchery. According to Mr. Monk, Ms. Watson agreed to help him take the quad from the building and that she held up a rolling door for him while he pushed the quad out of the building. He explained, "[Ms. Watson] held the door. It was a rolling door. I couldn't have done it by myself" RP at 132.

At the close of the State's case, Mr. Weigant moved to dismiss the burglary charge, arguing there was no evidence Mr. Weigant entered the building or that he possessed the intent to commit a crime inside the building. The court denied the motion.

Shandra Cook, Mr. Weigant's stepmother, testified for Mr. Weigant. She claimed that Mr. Weigant was visiting her at the end of August and was in her house on the night of August 30, 2012.

3

The jury found Mr. Weigant guilty as charged.

ANALYSIS

Mr. Weigant argues that the evidence is insufficient to support his conviction for second degree burglary because it "only supports a conclusion that the defendant was in possession of property taken in a recent burglary." Br. of Appellant at 1. He contends that "[w]hile it is possible that he and Benjamin Monk entered the garage together and stole the ATV, it is equally as possible that Benjamin stole the vehicle himself and the defendant only became aware of his actions after the fact." Br. of Appellant at 8-9.

*Standard of Review.* Sufficient evidence supports a conviction if, when viewed in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Hosier,* 157 Wn.2d 1, 8, 133 P.3d 936 (2006). We draw all reasonable inferences from the evidence in favor of the State and interpret them most strongly against the defendant. *Id.* In the sufficiency context, we consider circumstantial evidence as probative as direct evidence. *State v. Goodman,* 150 Wn.2d 774, 781, 83 P.3d 410 (2004). We defer to the fact finder on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. *State v. Thomas,* 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004), *abrogated in part on other grounds by Crawford v. Washington,* 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

*Sufficiency of the Evidence.* A person is guilty of second degree burglary if, "with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building other than a vehicle or a dwelling." RCW 9A.52.030(1). A defendant may also be guilty as an accomplice if, with knowledge that it will promote or facilitate the crime, he either (1) solicits, commands, encourages, or requests another person to commit the crime; or (2) aids or agrees to aid another person in planning or committing the crime. RCW 9A.08.020(3)(a). To be culpable as an accomplice, the defendant need not participate in the crime, have specific knowledge of every element of the crime, or share the same mental state as the principal. *State v. Berube*, 150 Wn.2d 498, 511, 79 P.3d 1144 (2003). Finally, RCW 9A.52.040 provides that "[i]n any prosecution for burglary, any person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein, unless such entering or remaining shall be explained by evidence satisfactory to the trier of fact to have been made without such criminal intent."

Citing *State v. Mace*, 97 Wn.2d 840, 650 P.2d 217 (1982), Mr. Weigant contends that, at most, the evidence establishes that he was an accomplice to possessing stolen property, but that it did not establish that he entered a building and stole the quad. In *Mace*, however, the evidence established that the defendant may have possessed and used

5

stolen bank cards shortly after they were stolen from a home, but no evidence other than possession of the cards linked him to the burglary. *Id.* at 841-42. Our Supreme Court held that, standing alone, the inference that Mr. Mace possessed the stolen bank cards after the burglary was insufficient to support his conviction for the burglary itself. *Id.* at 845.

In contrast, the evidence here establishes that Mr. Weigant was, at a minimum, an accomplice to the burglary. Ms. Watson testified that she observed Mr. Weigant and Mr. Monk go for a walk in the vicinity of the fish hatchery and later return with a moped and a quad. According to Ms. Watson, Mr. Weigant drove the car that towed the quad, while Mr. Monk steered the quad. Detective Adkisson testified that Mr. Monk initially told him that Mr. Weigant helped him remove the quad from the hatchery and that Mr. Monk did not implicate anyone else in the burglary.

The evidence also established that the burglary could not have been committed by one person. Mr. Monk testified that he needed the assistance of another person to hold up the garage door while he removed the quad from the building. Mr. Summers testified that the garage doors were heavy and that if they were not opened all the way up, the doors would slam closed.

Mr. Weigant argues that a fact finder might have inferred from the evidence that Mr. Monk removed the quad from the building by himself and that Mr. Weigant only became aware of the burglary after the fact. But when there are "hypothetically rational alternative conclusions to be drawn from the proven facts," the fact finder may discard a possible inference when it concludes such inference unreasonable under the circumstances. *State v. Bencivenga*, 137 Wn.2d 703, 708, 974 P.2d 832 (1999). Here, although Mr. Monk later denied that Mr. Weigant assisted him and Mr. Weigant's stepmother provided an alibi, the jury was free to reject their testimony as lacking credibility. Under the evidence presented, a rational trier of fact could have found, and did find, the essential elements of the charged crime beyond a reasonable doubt.

Considering the facts and inferences in the light most favorable to the State, we hold that the evidence was sufficient to convict Mr. Weigant of second degree burglary.

*Ineffective Assistance of Counsel.* Mr. Weigant contends that his trial counsel provided ineffective assistance by failing to propose WPIC 6.05, which would have told the jury to view the testimony of accomplices with caution. To succeed on a challenge of ineffective assistance of counsel, a defendant must show that his attorney's performance was deficient and that the deficiency was prejudicial. *State v. Stenson*, 132 Wn.2d 668, 705-06, 940 P.2d 1239 (1997). Counsel's performance is deficient when it falls below an

7

objective standard of reasonableness. *Id.* at 705. Prejudice occurs when, but for the deficient performance, there is a reasonable probability that the outcome would have differed. *Id.* at 706. We maintain a strong presumption that defense counsel's performance was within the broad range of reasonable professional assistance. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

Mr. Weigant contends that his attorney should have requested an instruction based on 11 *Washington Practice: Washington Pattern Jury Instructions: Criminal* 6.05 at 184 (3d ed. 2008), which provides as follows:

> Testimony of an accomplice, given on behalf of the [State] [City] [County], should be subjected to careful examination in the light of other evidence in the case, and should be acted upon with great caution. You should not find the defendant guilty upon such testimony alone unless, after carefully considering the testimony, you are satisfied beyond a reasonable doubt of its truth.

The committee's note following this instruction advises: "Use this instruction, if requested by the defense, in every case in which the State relies upon the testimony of an accomplice. *Do not use this instruction if an accomplice or codefendant testifies for the defendant.*" WPIC 6.05 (Note on Use) (emphasis added). Defense counsel's failure to request a cautionary accomplice instruction was sound trial strategy. As the State points out, although Mr. Monk testified for the State, his testimony helped Mr. Weigant: Mr. Monk took the blame for the burglary; denied that Mr. Weigant participated; and

8

identified Ms. Watson, not Mr. Weigant, as his accomplice. In view of this testimony, it was a legitimate tactical decision to forgo the instruction. Defense counsel would not want to undermine Mr. Monk's testimony by adding a cautionary instruction regarding his testimony. We reject Mr. Weigant's claim of ineffective assistance of counsel.

Mr. Weigant's counsel did not provide ineffective assistance of counsel by failing to offer WPIC 6.05.

We affirm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____
Korsmo, J.

_____
Siddoway, C.J.

9