IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | ) | No. 73162-9-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| MATTHEW RAYMOND WASHINGTON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: June 6, 2016 |
| | ) | |

2016 JUN -6 AM 9:38
COURT OF APPEALS DIV I
STATE OF WASHINGTON

BECKER, J. — Appellant Matthew Raymond Washington was convicted of

residential burglary after a latent fingerprint left on a jewelry box was identified as

his. We adhere to our earlier holding that fingerprint evidence alone is sufficient

to support a conviction where the trier of fact could reasonably infer from the

circumstances that it could only have been impressed at the time the crime was

committed.

FACTS

On the morning of August 12, 2013, a married couple left their house in

Wedgwood and went to work. They left their second-story bedroom window

cracked open. That afternoon, a neighbor had just walked past their house when

he heard a window break. He ran back to their house and saw a man struggling

to get through the bedroom window, with his feet still hanging out the window.

Minutes later, the neighbor saw a man leave the house through the front door. As the man walked away, the neighbor saw him drop a small jewelry gift box on the ground. Police were called but were unable to find a suspect near the scene.

A police officer did, however, lift a fingerprint from the jewelry gift box. Seattle Police Department fingerprint examiners analyzed the fingerprint and concluded that it matched Washington's.

The State charged Washington with one count of residential burglary. The jury found him guilty as charged. Washington appeals.

ANALYSIS

The issue on this appeal is whether fingerprint evidence was sufficient, by itself, to support Washington's conviction for residential burglary. Washington acknowledges our previous holding that "fingerprint evidence alone is sufficient to support a conviction where the trier of fact could reasonably infer from the circumstances that it could only have been impressed at the time the crime was committed." State v. Lucca, 56 Wn. App. 597, 599, 784 P.2d 572 (1990). He argues, however, that a 2009 report from the National Academy of Sciences and various documented incidents of erroneous fingerprint identification "prove that findings of guilt resting only on latent fingerprint analysis pose an unacceptable risk of erroneous identification." Washington requests that we overrule Lucca and hold that, absent corroborating evidence, fingerprint evidence alone is insufficient to sustain a burglary conviction.

The record is insufficient to even consider a categorical change to the status of latent fingerprint evidence. The record contains no evidence of error rates in latent fingerprint analysis. Nor does Washington cite a single case from any jurisdiction holding that latent fingerprint evidence alone is insufficient to support a conviction. And while the National Academy of Sciences report does raise questions regarding the reliability of latent fingerprint evidence, courts have found it insufficient to warrant changes to the status of such evidence. See Johnston v. State, 27 So. 3d 11, 21 (Fla.) (National Academy of Sciences report "lacks the specificity that would justify a conclusion that it provides a basis to find the forensic evidence admitted at trial to be infirm or faulty"), cert. denied, 562 U.S. 964 (2010); United States v. Rose, 672 F. Supp. 2d 723, 726 (D. Md. 2009) (despite National Academy of Sciences report, "fingerprint identification evidence . . . is generally accepted in the relevant scientific community, has a very low incidence of erroneous misidentifications, and is sufficiently reliable to be admissible under Fed. R. Ev. 702)"; Commonwealth v. Gambora, 457 Mass. 715, 933 N.E.2d 50, 61 n.2 (2010) ("nothing in this opinion should be read to suggest that the existence of the NAS report alone will require the conduct of . . . hearings as to the general reliability of expert opinions concerning fingerprint identifications"). A statement in the report itself cautions against giving it too much weight:

> The committee decided early in its work that it would not be feasible to develop a detailed evaluation of each discipline in terms of its scientific underpinning, level of development, and ability to provide evidence to address the major types of questions raised in criminal prosecutions and civil litigation.

COMM. ON IDENTIFYING THE NEEDS OF THE FORENSIC SCI. CMTY., NAT'L RESEARCH COUNCIL, STRENGTHENING FORENSIC SCIENCE IN THE UNITED STATES: A PATH FORWARD 7 (2009), https://www.ncjrs.gov/pdffiles1/nij/grants/228091.pdf (last accessed June 1, 2016). In addition, the report "does not appear to question the underlying theory which grounds fingerprint identification evidence; as the report states, there is scientific evidence supporting the theory that fingerprints are unique to each person and do not change over a person's life." Gambora, 933 N.E.2d at 58.

We have been informed about this same National Academy of Sciences report and documented incidents of fingerprint misidentification before on appeals regarding whether a Frye[1] hearing is required to admit fingerprint identification evidence. See State v. Pigott, 181 Wn. App. 247, 249-50, 325 P.3d 247 (2014); State v. Lizarraga, 191 Wn. App. 530, 565-67, 364 P.3d 810 (2015), review denied, No. 92624-7 (Wash. Apr. 27, 2016). We held that "the reliability of fingerprint identification has been tested in our adversarial system for over a century and routinely subjected to peer review," and has long been accepted by both the scientific community and Washington courts. Pigott, 181 Wn. App. at 251. See also Lizarraga, 191 Wn. App. at 565-67 (adhering to Pigott).

In contrast, Washington cases prohibiting convictions based solely on confessions and dog tracking evidence are based on a historical distrust of such evidence. See State v. Dow, 168 Wn.2d 243, 249, 227 P.3d 1278 (2010) (corpus

---

[1] Frye v. United States, 54 App. D.C. 46, 293 F. 1013 (1923). Under Frye, novel scientific evidence is admissible if it is based on a theory or principle which is generally accepted in the relevant scientific community. Pigott, 181 Wn. App. at 249.

delicti doctrine is grounded in "judicial mistrust of confessions"); State v. Loucks, 98 Wn.2d 563, 567, 656 P.2d 480 (1983) (courts regard the probative value of dog tracking evidence "with some suspicion"). Corpus delicti, "body of the crime," must be proved by evidence sufficient to support the inference that there has been a criminal act. State v. Brockob, 159 Wn.2d 311, 327, 150 P.3d 59 (2006). Here, there is no doubt that a burglary took place. Also, while a tracking dog cannot be questioned about his investigations or conclusions, a fingerprint identification analyst can. In this case, both the fingerprint analyst and the supervisor who reviewed her work testified at length about their methods of investigation and the reliability of their conclusions. For these reasons, appellant Washington's comparisons to confessions and dog tracking evidence are unpersuasive.

Proof of possession of stolen property, unless accompanied by other evidence of guilt, is not prima facie evidence of burglary. See, e.g., State v. Mace, 97 Wn.2d 840, 650 P.2d 217 (1982). This is because possession of stolen goods alone does not prove that the possessor committed the burglary—that is, entered or remained unlawfully in a building with the intent to commit a crime therein. See, e.g., RCW 9A.52.025 (residential burglary statute). Washington's comparison to possession of stolen property is inapposite to this case, where an eyewitness saw the burglar break into the house, exit the house, and drop the jewelry box.

A defendant confronted with fingerprint evidence also has the right to challenge that evidence by hiring his own expert. See, e.g., State v. Boyd, 160

Wn.2d 424, 158 P.3d 54 (2007) (Sixth Amendment right to effective assistance of counsel guarantees expert assistance if necessary to an adequate defense). Washington in fact exercised this right, although his expert did not testify at trial. Washington argues that the ability to hire an expert does not resolve the inherent unreliability of fingerprint evidence, but, as discussed above, he has not proven any such unreliability.

For these reasons, we adhere to our decision in Lucca. In this case, the burglary victims, the homeowners, testified that they did not know Washington, did not give him permission to enter their home or take their jewelry or jewelry boxes, and could not think of any reason that he would have left a fingerprint on any of their property. The neighbor who saw the man drop the jewelry box testified that he did not see anyone else touch the jewelry box from the time it was dropped until the police arrived. The jury could reasonably infer from the circumstances that Washington's fingerprint could only have been impressed on the jewelry box at the time the burglary was committed. See Lucca, 56 Wn. App. at 599. An eyewitness saw the burglary take place, and fingerprint evidence identified the burglar as Washington. Washington's conviction is supported by substantial evidence.

Washington asks that we deny any request by the State for costs to be imposed on him. The State has not yet submitted a cost bill, so Washington's request is premature. We will not make a decision on costs at this time.

Affirmed.

Becker, J.

WE CONCUR:

Schindler, J.

Leach, J.