# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48295-9-II |
| Respondent/Cross-Appellant, | |
| v. | UNPUBLISHED OPINION |
| DARNELL PARKS, JR., | |
| Appellant/Cross-Respondent. | |

MAXA, A.C.J. – Darnell Parks appeals his convictions for two counts of second degree burglary and one count each of second degree theft, second degree malicious mischief, third degree theft, and second degree vehicle prowling. One of the burglary convictions and the second degree theft and malicious mischief convictions related to a break in at the Tacoma Antique Mall. The other burglary conviction and the third degree theft and vehicle prowling convictions related to a break in of two vehicles in a fenced lot at Les Schwab Tire Centers, which was next door to the Antique Mall. Police found tools stolen from the vehicles at Les Schwab inside the Antique Mall after the break in at that store.

We hold that (1) the State presented sufficient evidence to support the burglary, theft and vehicle prowling convictions relating to the Les Schwab lot and to support the malicious mischief conviction relating to the Antique Mall; (2) the trial court did not violate Parks' constitutional right to counsel by denying his request to replace appointed defense counsel; and (3) the information charging him with two counts of theft, malicious mischief and vehicle prowling was constitutionally sufficient. Accordingly, we affirm Parks's convictions.

FACTS

The Antique Mall is a business in Fife that rents cubicles to a number of antique vendors within a large store. The store's back door faces a Les Schwab store that is between 120 and 160 feet away.

*Break In at Antique Mall*

Shortly after midnight on February 28, 2015, two men broke into the Antique Mall. They entered through the back door and stole a number of rings, chains, and other jewelry. Police officers discovered that the glass in a large display case was broken and jewelry was scattered about. Two other glass display cases also were damaged. The cost to repair the three display cases was $725. The police discovered various tools inside the store, directly outside the store, and on a path leading from the store: a tire iron, a mallet, a sledgehammer, a large socket, and screwdrivers.

A surveillance video showed at least two men in the store during the break in, one of whom was wearing a distinctive jacket with white sleeves. A store employee recognized that person as someone who had been in the store the previous evening wearing the same style jacket, and he stated that the person had a tattoo of musical symbols on his hand. Parks was wearing a jacket with white sleeves when he was arrested and he also had a tattoo of musical symbols on his right hand. The employee identified Parks as the person who had been in the store the day before and who appeared on the surveillance video.

*Break In at Les Schwab Lot*

Les Schwab had a back lot that was completely enclosed by fencing. At approximately 4:00 AM on the morning of February 28, a truck driver who had parked his personal vehicle in the

lot at 4:00 PM the previous day discovered that someone had broken into and ransacked his vehicle. A toolbox full of tools was missing, as well as a satellite radio, GPS system, lug nut wrench, and jack handle. Police found a number of items taken from the vehicle in the Antique Mall after the break in: a mallet, screwdrivers, the lug nut wrench, and a socket.

Later that morning, Les Schwab employees discovered that someone had entered a semi-truck parked in the fenced lot and removed a sledgehammer and a pin puller for releasing trailers. Police found the sledgehammer and the pin puller in the Antique Mall after the break in.

The fenced lot was open during business hours and then locked at 6:00 PM when the store closed. A number of people had the lock combination, including employees of a company that leased space in the lot. Les Schwab's surveillance camera was inoperable, and therefore there was no video of anyone entering the lot. The State presented no evidence regarding how someone entered the lot. There were no obvious points of entry.

*Criminal Charges*

The State filed an amended information charging Parks with two counts of second degree burglary, two counts of second degree theft, second degree malicious mischief, and second degree vehicle prowling. The information provided different addresses for the separate burglary charges, but it did not provide any specific factual information regarding the remaining charges.

*Request to Substitute Defense Counsel*

Two months before trial, Parks asked the trial court to replace his defense counsel. Parks asserted that (1) he had been in jail for five months and did not know anything about his case and did not know what was going on; (2) his counsel had not reviewed the police reports or discovery with him, would not answer his calls, and had not communicated with him; and (3) he had not

even talked to his counsel for more than three minutes. In addition, Parks stated that he did not even want to be in the same courtroom with his counsel, and that counsel was disrespectful and had walked out of the room when Parks was talking to him.

Parks' defense counsel was not available when Parks made his request, but a colleague stated that defense counsel was not joining the motion and did not believe that new counsel was necessary. The trial court denied the motion without prejudice and renoted the motion for when defense counsel would be available.

The following week Parks renewed his motion to replace defense counsel. Parks reasserted that he had been unable to review a police report or other discovery and that his counsel had failed to return his calls. He stated that he had "been here for five months and there's no communication, whatsoever. It's just really bad." Report of Proceedings (RP) (July 24, 2015) at 3.

Defense counsel stated that he was not joining the motion and saw no reason why he could not continue to represent Parks. The trial court asked defense counsel if he believed that any ethical prohibitions prevented him from remaining on the case, and counsel responded that there were none. Defense counsel also noted that they were waiting for fingerprint evidence and that Parks had viewed the surveillance video with an investigator.

The trial court denied the motion to substitute defense counsel, concluding that there was no reason to remove defense counsel from the case. When Parks stated that he had not finished speaking, the court asked Parks what else he wanted to say. Parks stated, "There's one time I was with him and he referred to black people are so difficult." RP (July 24, 2015) at 5. And he asserted that defense counsel had hindered his case. Parks concluded that counsel was making

his life miserable and that he did not want to be around counsel or have him on the case. The court asked defense counsel if he wanted to say anything to clarify, but counsel declined because he did not want to reveal client confidences. The trial court then stated that it had made its ruling.

*Trial and Verdict*

The case proceeded to trial. The jury found Parks guilty of two counts of second degree burglary and one count each of second degree theft, second degree malicious mischief, third degree theft, and second degree vehicle prowling. The jury found Parks not guilty of one count of second degree theft. The trial court sentenced Parks to 68 months in prison. The trial court entered an order finding that Parks was indigent for purposes of appeal.

Parks appeals his convictions.

## ANALYSIS

A.    SUFFICIENCY OF THE EVIDENCE

Parks argues that the State presented insufficient evidence for a rational jury to convict him of second degree burglary, second degree theft, and second degree vehicle prowling at the Les Schwab lot, and to convict him of second degree malicious mischief at the Antique Mall. We disagree.

1.    Standard of Review

When evaluating the sufficiency of evidence for a conviction, the test is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). We assume the truth of the State's evidence and all reasonable

inferences drawn from that evidence when evaluating whether sufficient evidence exists. *Id.* at 106. We treat circumstantial evidence as equally reliable as direct evidence. *State v. Farnsworth*, 185 Wn.2d 768, 775, 374 P.3d 1152 (2016). And we defer to the trier of fact's resolution of conflicting testimony and evaluation of the persuasiveness of the evidence. *Homan*, 181 Wn.2d at 106.

####    2.    Les Schwab Convictions

Parks argues that the State presented insufficient evidence that he was the person who committed second degree burglary, third degree theft and second degree vehicle prowling at the Les Schwab lot because there was no evidence that he was ever at Les Schwab. He also argues specifically regarding the second degree burglary conviction that there was no evidence that anyone unlawfully entered or remained on the Les Schwab lot. We disagree.

####       a.    Evidence of Identity

Parks argues that there was no evidence that he had ever been at Les Schwab, entered the two vehicles, or taken the tools from them. He asserts that the evidence at most showed that he possessed some of the tools that had been taken from Les Schwab, but he argues, based on *State v. Mace*, 97 Wn.2d 840, 843, 650 P.2d 217 (1982), that mere possession of stolen property is insufficient to prove burglary.

In *Mace*, the court stated that "proof of possession of recently stolen property, unless accompanied by other evidence of guilt, is not prima facie evidence of burglary." *Id.* However, the court emphasized that proof of such possession will support a burglary conviction if there is additional corroborative evidence, even if slight, tending to show the defendant's guilt. *Id.*

Presence of the defendant near the scene of the crime along with possession of stolen property is sufficient corroborative evidence to support a burglary conviction. *Id.*

Here, the State presented corroborative evidence of guilt beyond Parks's possession of the stolen tools. First, there was direct evidence that Parks was present near the scene of the Les Schwab crimes shortly after those crimes were committed. Parks committed a burglary next door around midnight, and the evidence suggested that the crimes at Les Schwab occurred after Les Schwab closed at 6:00 PM the previous evening. Second, the evidence creates inferences that Parks used the tools stolen from Les Schwab to commit the Antique Mall burglary and that Parks committed the Les Schwab crimes to assist in the Antique Mall burglary.

Even though the State presented no direct evidence that Parks entered the Les Schwab lot and took tools from the vehicles, there was corroborating evidence of guilt in addition to Parks's possession of the stolen tools. Accordingly, we hold that viewing the evidence in the light most favorable to the State, a rational trier of fact could have found beyond a reasonable doubt that Parks was the person who committed second degree burglary, third degree theft, and second degree vehicle prowling at the Les Schwab lot.

b.    Evidence of Unlawful Entry

One element of second degree burglary is entering or remaining *unlawfully* in a building. RCW 9A.52.030(1). "Building" is defined as to include a fenced area. RCW 9A.04.110(5). Parks emphasizes that there was no evidence regarding when or how the items were taken from the Les Schwab lot, and therefore argues that they could have been taken during business hours or by someone with lawful access to the lot.

However, as discussed above, there was circumstantial evidence that Parks entered the Les Schwab lot and stole the tools. Further, the Les Schwab assistant manager testified that he did not give Parks permission to enter the fenced lot. Accordingly, we hold that the State presented sufficient evidence for a rational jury to find beyond a reasonable doubt that Parks committed second degree burglary at the Les Schwab lot.

3.    Second Degree Malicious Mischief – Antique Mall

Second degree malicious mischief normally requires physical damage in an amount exceeding $750. RCW 9A.48.080(1)(a). It is undisputed here that the State proved that only $725 worth of damage was caused inside the Antique Mall. However, under RCW 9A.48.100(2), a person can be convicted of second degree malicious mischief "[i]f more than one item of property is physically damaged as a result of a common scheme or plan by a person" and the aggregate value of the damages exceeds $250. The to-convict instruction for second degree malicious mischief relied on this aggregate value provision.[1]

Parks argues that the phrase "by a person" in RCW 9A.48.100(2) means that the statute is inapplicable when the evidence showed that the damage could have been caused by more than one person. He claims that the evidence was insufficient to convict him of second degree malicious mischief because the surveillance video shows that another man was involved in the burglary. Therefore, he argues, there was insufficient evidence to show that Parks himself – rather than his accomplice – damaged more than one item of property.

---

[1] Parks argues that the State could not add the damage caused in the Les Schwab break in to the damage caused in the Antique Mall break in to reach the $750 threshold. But because RCW 9A.48.100(2) provides a $250 threshold for second degree malicious mischief when more than one item of property is damaged, we need not address this argument.

Parks's argument is inconsistent with the complicity statute. RCW 9A.08.020(1) states that "[a] person is guilty of a crime if it is committed by the conduct of another person for which he or she is legally accountable." A person is "legally accountable" for the conduct of another person when he is an accomplice of that person in the commission of the crime. RCW 9A.08.020(2)(c). And a person is an "accomplice" of another person if he aids that person in committing a crime. RCW 9A.08.020(3)(a)(ii). Here, there is no question that even if the other person shown on the surveillance video caused the damage to the property in the Antique Mall, Parks was his accomplice and therefore is legally accountable for that person's conduct.

Parks argues that the general complicity statute does not apply because RCW 9A.48.100(2), as the more specific statute, takes precedence. He cites *State v. Montejano*, 147 Wn. App. 696, 196 P.3d 1083 (2008).

In *Montejano*, the defendant was charged with the crime of riot under former RCW 9A.84.010(1) (2003), one element of which was acting with three or more other persons. *Id*. at 699. The offense was a felony if "the actor" was armed with a deadly weapon. Former RCW 9A.84.010(2) (2003). The defendant argued that the crime could not be committed by complicity under RCW 9A.08.020 when he was not armed and did not know that the other participants were armed. *Montejano*, 147 Wn. App. at 698-99. The court concluded that because the riot statute expressly defined the complicity element, application of the general accomplice definition in RCW 9A.08.020(3)(a) was inappropriate. *Id*. at 703.

> Washington's riot statute defines the contours of the accomplice liability by setting forth the participation required by the accused. It is well established that, in the face of such a specific statute, the more general statute, in this case the general complicity statute, does not apply.

*Id*.

9

Unlike the riot statute, RCW 9A.48.100(2) does not contain any specific complicity requirement. Instead, second degree malicious mischief as defined in that statute clearly can be committed by a single person. Therefore, RCW 9A.48.100(2) does not foreclose application of general accomplice liability as in *Montejano*.

We hold that the State presented sufficient evidence for a rational jury to find beyond a reasonable doubt that Parks or an accomplice committed second degree malicious mischief based on damage to two or more items of property under RCW 9A.48.100(2).

B.      MOTION TO SUBSTITUTE DEFENSE COUNSEL

Parks argues that the trial court violated his constitutional right to counsel by denying his request to remove appointed defense counsel. We disagree.

1.    Legal Principles

A criminal defendant has a constitutional right to counsel under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. However, a defendant does not have an absolute right to choose his counsel. *State v. Varga*, 151 Wn.2d 179, 200, 86 P.3d 139 (2004). To justify replacing appointed defense counsel, the defendant must show good cause. *Id.* Good cause includes an irreconcilable conflict or a complete breakdown in communication between the defendant and defense counsel. *Id.* When the relationship between the defendant and defense counsel has completely collapsed, the trial court's refusal to substitute new counsel violates the right to counsel. *State v. Cross*, 156 Wn.2d 580, 606, 132 P. 3d 80 (2006).

But the defendant's general dissatisfaction with or loss of trust or confidence in defense counsel is not sufficient cause to appoint new counsel. *Varga*, 151 Wn.2d at 200. The

relationship between the defendant and counsel must be so diminished as to prevent presentation of an adequate defense. *State v. Stenson*, 132 Wn.2d 668, 734, 940 P.2d 1239 (1997).

We review a trial court's denial of a motion to substitute new appointed counsel for an abuse of discretion. *Varga*, 151 Wn.2d at 200. When reviewing such a decision, we consider (1) the extent of any conflict between the defendant and counsel, (2) the adequacy of the trial court's inquiry into that conflict, and (3) the timeliness of the motion to appoint new counsel. *Cross*, 156 Wn.2d at 607.

2.    Analysis

Parks claims that the trial court failed to make an adequate inquiry into his request to replace defense counsel. To conduct an adequate inquiry, trial court must make a "meaningful" inquiry that includes a "full airing" of the defendant's concerns. *Id.* at 610. However, a formal inquiry is not always required when the defendant is given an opportunity to fully explain himself and state the reasons for his dissatisfaction with counsel. *State v. Schaller*, 143 Wn. App. 258, 272, 177 P.3d 1139 (2007).

Here, the trial court gave Parks a full opportunity in two separate hearings to explain why he wanted defense counsel replaced. The court also allowed Parks to make additional comments after formally denying his motion. Parks claims that the trial court was required to ask specific and targeted questions to both Parks and defense counsel in order to fully investigate the situation. However, he cites no Washington authority requiring such a specific interrogation. The record confirms that the court allowed Parks to air his concerns.

Further, Parks's comments to the court did not demonstrate the type of breakdown in communication necessary to establish good cause for replacing defense counsel. Parks's request

11

was based not on a breakdown of communication, but on a *failure* to communicate. Parks was

dissatisfied because counsel had not talked to him about the case, reviewed discovery with him,

or returned his calls. There is no indication that counsel would be unable to communicate with

Parks about the case.

Similarly, the record does not show a complete collapse of the attorney-client

relationship. Parks made comments that he did not want to be around defense counsel, that

counsel was disrespectful to him, and that counsel had made a racial comment toward him.

However, there was no indication that Parks and defense counsel had an irreconcilable conflict

or a collapsed relationship that would prevent presentation of an adequate defense.

The trial court had discretion to determine whether to replace appointed counsel. We

hold that the court did not abuse its discretion in denying Parks's request to replace his counsel.

C.      SUFFICIENCY OF THE INFORMATION

Parks argues that the information charging him with two counts of second degree theft,

second degree malicious mischief, and second degree vehicle prowling was insufficient because it

did not allege specific facts about the crimes. We disagree.

A constitutionally sufficient charging document must include all essential elements of a

crime. *State v. Zillyette,* 178 Wn.2d 153, 158, 307 P.3d 712 (2013). The primary goal of this

essential elements rule is to give notice to an accused of the nature of the crime that he or she

must be prepared to defend against, and the secondary purpose is to bar any subsequent

prosecution for the same offense.[2] *Id.* at 158-59.

---

[2] Because the State may correct a vague charging document with a bill of particulars, a defendant generally waives a vagueness challenge to a charging document on appeal if he or she fails to

When a defendant challenges the sufficiency of a charging document for the first time on appeal, we liberally construe its language in favor of validity. *Id.* at 161. In liberally construing the charging document, we employ the two-pronged test established in *State v. Kjorsvik,* 117 Wn.2d 93, 105–06, 812 P.2d 86 (1991): (1) do the necessary elements appear in any form, or by fair construction, on the face of the document and, if so, (2) can the defendant show he or she was actually prejudiced by the inartful language. *Zillyette*, 178 Wn.2d at 162.

Here, Parks concedes that the information contained the essential elements of the crimes. He argues that the information did not describe the property he was accused of stealing, the property he was accused of damaging, and the vehicle he was accused of entering. But we distinguish between charging documents that are constitutionally deficient because of the State's failure to allege each essential element of the crime charged and those that are merely factually vague as to some other matter. *State v. Mason,* 170 Wn. App. 375, 385, 285 P.3d 154 (2012). Parks has not shown that he was prejudiced as a result of any vagueness in the information.

Accordingly, we hold that the information was sufficient with regard to the theft, malicious mischief and vehicle prowling charges.

D.      APPELLATE COSTS

Parks asks that we exercise our discretion to deny any appellate costs the State requests. The State objects to our consideration of appellate costs at this time, noting that it has not yet decided whether to request costs.

---

request a bill of particulars at trial. *State v. Mason,* 170 Wn. App. 375, 385, 285 P.3d 154 (2012). But the State does not make this argument, and therefore we do not address this issue.

No. 48295-9-II

Under *State v. Grant*, a defendant is not required to address appellate costs in his or her briefing to preserve the ability to object to the imposition of costs after the State files a cost bill. 196 Wn. App. 644, 650-51, 385 P.3d 184 (2016)  A commissioner of this court will consider whether to award appellate costs in due course under the newly revised provisions of RAP 14.2 if the State decides to file a cost bill and if Parks objects to that cost bill.

CONCLUSION

We affirm Parks's convictions of two counts second degree burglary and one count each of second degree theft, second degree malicious mischief, third degree theft, and second degree vehicle prowling.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, A.C.J.


We concur:


_____
LEE, J.

_____
MELNICK, J.